IIisMPUXLL, Cu. J.
At first view it may appear anomalous that some of the facts, afLer the plea in abatement was ruled out, should have been admitted in evidence. But the, matters charged in tlie plea were averred in another portion of the answer; the. testimony was received without objection, and, in in fact, was admissible under the, general issue. The facts went to show that tlie property was not open to administration; that it had by law vested in tlie heirs, and that tlie appointment was consequently a nullity, and these are objections to the foundation of the action, and, in fact, to tlie validity of tlie entire proceeding.
The ground on which the plea in abatement was rejected lias not been stated. Tlie appellee admits that upon the death, under the laws then existing, all the property descended to tlie heirs, but, that it remained for the heirs to accept or reject tiie succession before they were accountable for its charges, or it could suffer by their acts, but that there was no limitation as to when such acceptance or rejection should take place, and that at the time the administrator was appointed the common law was adopted, and the administratrix, having taken charge of tlie estate, has a right to sue for all its possessions.
The appellants contend that the acts of possession and ownership on the part *21 of the ireiily were such as amount, tosn acceptance of the succession by the heirs, an r .nviqueulij'' preelud.'.l the nee.'sfity of administration. In exam-inin'' th;. ij.-ct there will app ‘nr a striking dUierence between Hie doctrines of ''-peni- ii ¡mil of English jurisprudence in relation to the rights of heirs in tlie tv : e< (,f t!i" deceased. Tlie really, b\ the English law. is cast upon the lieir, suef, 1, may be, to certain charges, never exceeding, however, the amount of pron-riy received. The. personally was, by tlie ancient principles'of tlie common law, supposed to have vested in the king, as parms put rice and general tr.- ■!"<■ of the, kingdom. This prerogative, for some time exercised by tlie kin.T’s i ivu ministers, was afterwards vested in the prelates, on the presumption Uial they were of belter consciences Ilian laymen, and had more knowledge (,i what would conduce to the benelit of the soul of the deceased. The goo.Is of the intestate were, held in trust for distribution in charity to tlie poor, and for uses denominated by the superstition of the times as pious. The abuse of this power, reposed in the ordinary, became so flagrant that by statute 31st Ed. ILL O. II. lie was required lo depute the administration to the nearest and most lawful friends of the deceased, and this is tlie origin of administrators, as they now stand, in most of the States recognizing the common law as tlie basis of their jurisprudence. Under this system it appears that the real property at once vested in the heirs, the personalty primarily in tlie sovereign, on certain trusts and for certain purposes. The modern doctrine seems to be, that the personal property is in abeyance until the grant of administration. Whatever may be the right of heirs in personal property nnadministered, it is clear that they arc entitled to the residuum after the discharge of the debts.
In this State, by our present laws, all the property vests in the heirs, at the death, subject, however, to administration.
In tlie. Spanish code no distinction was made between the real and personal property oí a succession. It descended, in one mass, to the heirs; was im-pressivfwhh the like qualities; and was all subjected to the same rules and dispositions. The heir, by force of a legal subtlety, was considered as representing the person of the deceased; ¡uní that in fact they both constituted the same p.w.-on. (L. 13, Tit. 9, Part. 7.) Consequently, on the. death, there passed to the, heir all the property, rights and actions of the deceased, as also liis debts and obligations. (Diccionario, verbo, HEREDERO.) The debts, the heir was bound to discharge, if the estate.vested in him, without qualification— whether th ■ assets received were sufficient or not. To save the lieir from such responsibility the law accorded to him a defined period within which to determine whether he would accept tlie estate, and afterwards the further benefit of inventoiy was granted, by which the lieir was relieved from responsibility beyond the amount received. Bnt notwithstanding the fiction that the deceased and heir constituted the same person, and that consequently the property and debts of the former passed to tlie latter, yet, it seems well established by the laws of Spain that the heir was not invested with the character of the representative of the deceased until he accepted the inhertanee. (Escriche, Dic-cionario, verbo, Heredero.) And consequently, at the death, he was nod vested with the property of tlie estate, bnt only with the faculty of acquiring it by acceptance. (Poutenoy v. Cecil’s Heirs, 8 La. B., 321.) This was the rule, under tlie code of 180S, in Louisiana. Under the present code, the succession is acquired by the lieir immediately on tlie deatli of the deceased, as declared in article 93-1, C. C.; though this is modified by article 9-10, suspending the right of the lieir until he decides whether lie accepts or rejects. Under all the codes and the laws of Spain, acceptance has a retroactive effect, and the lieir is considered as having succeeded from the death. (Escriche, verbo, ACEPTACION DE HERENCIA.)
But, without treating further of general principles in relation to the descent of a succession, let us consider the point more immediately presented for decision. One of tlie principal questions in the cause, is, whether, in fact, this succession was accepted by tlie heirs, in 1833, so as to vest, in the language *22 of the plea, the estate in the heirs, without the necessity of administration. Acceptance of a succession is divided into two classes, viz:
1st. Pure and simple, and
2d. Acceptance with the benefit of inventory.
By acceptance pure and simple, the heir, as a general rule, with some excexrtions, is charged with the debts and legacies of the deceased, though they exceed the amount of the hereditary property. By acceptance with the benefit of inventory, the responsibility of the heir does not, as before stated, extend beyond the amount received. Pure and simple acceptance may be either express or tacit. It is express, when the title, or quality, of heir is assumed, whether this be done verbally or in authentic or private writing; and it is tacit, when the heir does some act which necessarily presupposes his intention of accepting. (L. 11 and 18, Tit. (i, Part. 6; Diccionario, verbo, ACEPTACION DE HERENCIA.)
The appellants contend that by this latter mode was this estate accepted; that the acts of the surviving wife, the mother of the heirs, and of the heirs themselves, were such as to denote, unequivocally, their intention to accept the estate. When the intention of an heir is to be deduced from his acts, there may occasionally arise some difficulty in determining whether his acts are such as to induce acceptance, or whether they are only of a conservative character, or such as are usual in a provisory administration of the property. The law gave a certain time for deliberation and for the making of an inventory, and meanwhile the heir had the power to perforin such acts as were necessary for the preservation of the property, and to save it from loss and damage. Such acts may be done by the heir without coinpromiting him to the acceptance of the succession, but when ho takes possession and does acts which lie could only rightfully do in the capacity of heir — when, for instance, he rents tile houses, cuts tile timber, changes the form of the buildings, or sells without the authority of the judge, collects the debts, or pays the legacies, such acts are indicative of ownership, and maiiifost an intention of acceptance as heir. (L. 11, Tit. 6, part 6; Diccionario, loco citato.)
In this case the acts of the surviving wife, and of the family, were such as characterize proprietorship. They acted as owners of the property. They remained in possession and controlled it for years. The title to the land now in controversy was not completed in the lifetime of the deceased, hut was issued some eighteen months after his death, and was doubtless then received by the widow and the family. Mr. De Leon, a witness, testifies that the widow was under the direction of the authorities for the regulation of such matters until tile breaking out of the war, and that she ami the sou took charge of the property. These acts are such as would he done by those who considered themselves as the legal owners, and not such as are merely conservative against loss and injury. But It is contended that, notwithstanding such acts might bind the heirs to accept, had they been of age, yet, being minors, no acceptance was in fact made, that the estate was left vacant, and it is consequently open to their acceptance, or what, it is contended, is equivalent to a grant of administration.
It may be admitted, as a general rule, that minors cannot by their own act accept of a succession, but this is subject to exceptions. An infant or minor under seven years of age cannot accept of a succession, except through the intervention of tutors or curators. A minor below fourteen years, under paternal power or tutorship, cannot accept without the sanction of the father or tutor, or, if lie have neither, without the authorization of the judge. But the minor over fourteen years, having no father or curator, can accept and acquire for himself an inheritance, with the privilege, if it be found prejudicial, of subsequent repudiation. (L. 13, Tit. 6 and 7, Tit. 10, part 6; Diccionario, verbo, ACEPTACION DE HERENCIA; Febrero Mejicano, vol. 2, p. 121.)
There is no evidence as to the precise ages of the heirs at the death of the intestate. The presumption is that the sou and eldest daughter were over fourteen. The son, with his mother, took charge of the property. He followed *23 the Mexican army on their retreat in 1S3G, and returned for his mother in 1837 These acts indicate free agency and a maturity of age beyond that of fourteen years. The oldest daughter continued with the family in the possession of the estate, and it is a fair presumption that she had attained fourteen, before marriage, in 1834. The mother was the natural guardian and tutrix of her children, and it is questionable whether her acts, as ‘such, would not he construed into an acceptance for their benefit, especially for that of t he youngest child. The father, where a minor of seven years is instituted as heir, can accept the inheritance for him. (Escriche Diccionario, loco cih io.)
¡■'rom the facts, we are of opinion tha> ilie estafe; -ras accepted in the interval between 1 lie death in 1833 and the removal of t: s family in 1836; that it received all ihe administration necessary to prepare it for distribution among the heirs. There was, in fact, no nceessiiy for a formal administration. There were no debts, and had there been any the creditors w ere not without remedy. The estate, then, was fully vested in the heirs, without any debts, legacies, incumbrances, or charges of any description ; and the question is, whether sixteen years after the opening of the succession or the death of the ancestor they can be divested and the estate subjected to administration, when neither creditors nor heirs can derive any benefit from the act, and when no end or object legitimately within the scope of an administration can be effected.
The uniform policy of our laws lias been that administration, when taken, should l)o conducted with such prudent activity and energy as will bring the affairs of a succession to an adjustment at once speedy and advantageous to creditors and others interested. The intention is that, as the residuum, rightfully belongs to the heirs, they should be placed in possession as soon as justice to the creditors will permit. This policy, so forcibly enjoined, after the grant of administration should, when we consider the reasons upon which it is founded, have some weight against the grant itself, when not applied for until the lapse of such time after the death. "To permit a grant, as in this case, after the lapse of sixteen years, to be available for the recovery of the property, would, as a general rule, inflict the most serious evils upon heirs, their creditors and assignees. The heirs, as a general rule, or claimants under them, would, after the lapse of some time, he in possession of the property, and it would be a grievous wrong to permit them to he disturbed by a grant of administration, unless cause be shown for the which does not in this case. There be cases in which, after lapse of time, an administration, at least a limited one, may be deemed expedient. Debts may not become due, or charges may not accrue against the estate, until years after the succession is opened, and other like cases which must be determined on as they arise. But in this case there is not now nor was there ever a debt. The surviving wife, the son, and the daughters with the consent of their husbands, or if that •cannot be obtained, the authority of the court, have full capacity and power to sue for, and if they have right, recover the property. Why, then, under such circumstances, should there be, after the intervention of so mueli time, an administration? Let ns suppose that the widow and the heirs had continued in the possession of the property, having alienated, perhaps, portions of it for a valuable consideration: would it be tolerated that, under fcliQ mask of administration, a stranger who might have obtained letters should recover this property from the heirs and their bona fide assignees? S.uch would, however, he the legal and inevitable effect, were the appointment regarded as having any force. The grant is retroactive. It takes possession of the estate as it existed at the death of the deceased, though, by tiie way, it will be found that this comprehensive retroaction of a grant of administration is incompatible, unless certain exceptions be admitted, with the immediate investiture, on death, as recognized by statute, of the estate in the heirs. To permit a grant under such circumstances to be made, or to operate so disastrously upon heirs and others in possession of the property in good faith, would be a great evil. An authority ■conferred by law for necessary and salutary purposes, would be perverted to ¡the worst, "innocent possessors might, after the lapse of twenty or thirty *24 years, ’do. disturbed in their rights, and this where there had never been a creditor of the estate, and where the heirs .were perfectly competent cither individually or through their guardians, to assert their rights.
Upon tiie circumstances of this casi', the fact that the estate was accepted and vested in the heirs in 183IÍ, or previous to the removal of the family, tlfat there are no debts, and that the heirs can individually assort their rights in the properly, and upon principles of public policy which, after the lapse of a sufficient time, must regard succession as closed, whether ever administered in point of factor not,'we are of opinion that this appointment must be regarded as a nullity, and that the plaintiff, as administratrix, lias no right to-maintain tills action.
The question of tiie effect of an acceptance was not sufficiently discussed in argument to authorize any exposition further than is necessary to the decision of this cause. When an estate is accepted without tiie bonelit of inventory, there is no necessity for administration, as the heirs-become responsible for all liabilities. But, so far as the question involved in this ease is affected, it is immaterial whethei this estate, as belonging to minors, be regarded as accepted with tiie benefit of inventory or not. '(’lie acceptance, let it be made in what mode it may, vested the property. It was, perhaps, tiie misfortune of the-country that tire regulations in the laws of Spain, in relation to the acceptance of successions, were practically and to a great extent disregarded. Administration was very generally taken on the estates-of deceased persons, without regard to the mode of acceptance, and whether tire heirs had, in strictness of law, rendered themselves responsible or not. In ordinary cases we would not hold that administration taken after a simple or unconditional acceptance, though unnecessary, would he. absolutely void.
But in cases like the present, whore there are no debts and no necessity for administration, tiie property having vested in the heirs, and a long time having intervened between the death and the application, we must hold (lie, appointment to he null, and not permit an authority conferred by law to bo perverted-to purposes for which it was never intended.
We are of opinion tiiat there was error in sustaining the exception to the plea in abatement, and, as the suit cannot be sustained'by the plaintiff in her representative capacity, it is ordered that the same be dismissed.
Reversed and dismissed.
Note 6. — Hurt v. Horton, 12 T., 286; Francis v. Hall, 13 T., 180; Grande v. Herrera. 15 T., 533 Soye v. McCallister, 18 T., 80; McMahan v. Rice, 16 T., 335; Wardrup v. Jones, 23 T., 489.