JOSEPH LABADIE ET AL. v. FRANK DEAN, COLLECTOR, &c.

1. APPEAL BOND.—In an appeal by several parties, an appeal bond in which two or more of the appellants sign as the sureties, is not such an appeal bond as is contemplated by the statute, to give this court jurisdiction of the case.

2. TERM OF COURT.—When a court is organized and opened for a regular term, the term continues until it is ended by order of final adjournment, or until the expiration of the time fixed by law for its continuance.

3. SESSIONS OF COURT.—The sessions or sittings of the court during the term are entirely within the control of the court; its orders in respect thereto are intended for its own convenience and the convenience of parties interested in its proceedings.

4. CASE APPROVED.—George *et al. v.* Dean, *supra,* approved.

5. LEVY OF TAX—ORDER OF COUNTY COURT.—Where the order of court, imposing the tax within its authority, states the amount and character of the tax, and of the property upon which it is levied, such order is sufficient.

6. COUNTY POLL-TAX.—A county poll-tax, levied by the act of the Legislature, does not require an order of the County Court, levying it. to authorize its collection.

7. ASSESSMENT ROLLS.—Mere defects in the form and manner of making up the consolidated assessment roll, do not afford grounds for the interposition of a court of equity, to enjoin the collection of taxes legally levied, where, from the different statutes on the subject, the meaning of such tax-rolls can be ascertained.

APPEAL from Galveston. Tried below before the Hon. William H. Stewart.

November 27, 1876, Joseph Labadie and twenty-three other tax-payers of the county of Galveston filed their petition in the District Court against Frank Dean, the collector of taxes for said county, to enjoin the collection of the following taxes:

1. An *ad valorem* tax of one fourth of one per cent., levied for general county purposes for the year 1875.

2. A tax of one tenth of one per cent., levied to pay the interest, and to provide a sinking fund to liquidate certain bonds issued by the county of Galveston, under a special act

of the Legislature, authorizing their issue, passed November 29, 1871.

3. A tax of one eighth of one per cent., levied under an act of the Legislature, to pay the interest on registered county scrip. And,

4. A county poll-tax of fifty cents.

As grounds for relief, it was alleged that the poll-tax was not levied or ordered to be assessed and collected by the County Court for the year 1875; that the other taxes were assessed under a certain entry, made January 28, 1875, on the record of the proceedings of the County Court of Galveston county, a copy of which is as follows:

"In the matter of Levying Taxes for the year 1875.

"*Be it ordered by the County Court,* That there shall be an annual *ad valorem* tax levied for the year 1875, of one fourth of one per cent., the same as last year, (one fourth of one per cent.;) also a special tax, to pay county indebtedness, of one tenth of one per cent.; also a road and bridge tax of one twentieth of one per cent.; also a funding county scrip tax of one eighth of one per cent.; (and the tax ordered on page 44, of one twentieth of one per cent., to create a sinking fund to pay interest on Ballinger & Jack bonds.)"

This order, it was insisted, was a nullity, because the County Court met on 25th January, its regular term, and adjourned over until 27th, when there was not a quorum present, and an entry was made; adjourning over until 28th, when said order was made; it being insisted that the failure of a quorum on 27th effected an adjournment of the term, so that the action on 28th was not made in term time of said court.

That the tax of one eighth of one per cent. was not apportioned by said pretended levy according to law, and was not levied or ordered to be assessed upon property, and to be collected as an *ad valorem* tax; wherefore its collection was unauthorized.

That the special tax of one tenth of one per cent. was as-

sessed for interest and sinking fund on county bonds, issued in funding the county indebtedness, under special act of the Legislature, approved November 27, 1871, as follows:

"*Be it enacted by the Legislature of the State of Texas,* That the County Court of Galveston county is authorized to issue, from time to time, interest-bearing and coupon bonds, for such sums and in such amounts, payable at such time, as such court may deem proper: *Provided,* That the bonds hereby authorized shall be issued only for the purpose of funding the present outstanding indebtedness of said county of every character whatsoever due and to be due when such bonds are issued. Said court shall, at the time of ordering such issue, also provide for the payment of the interest on said bonds, and a sinking fund to meet the principal under the laws now in force."

It was alleged that this act did not confer the right to levy a tax, as was done on the issuance of said bonds.

That the defendant was threatening to enforce the collection of said taxes, by seizure and sale of property, &c.

It was also alleged, that the consolidated tax-roll, upon which the taxes were claimed, was defective in that, under the headings of values and taxes, throughout, there was no indication of what the figures expressed, whether dollars, cents, or other denomination of money.

The defendant demurred, and pleaded the legality of his right to collect the taxes.

Judgment was rendered, refusing an injunction, and plaintiffs appealed. The appeal bond was signed by three of the appellants as sureties.

On the trial, in addition to the proceedings set out above, of the County Court, the order of the said court providing for the issuance of the funding bonds was read, in which is the following: "It is further ordered, that to provide for the interest on said bonds, and a sinking fund for the principal thereof, a special *ad valorem* tax of one tenth of one per cent. is hereby levied on all the property, real and personal, sub-

ject to taxation by this court, within Galveston county, to be assessed and collected, as and when other county taxes are assessed and collected"—the order bearing date December 29, 1871.

The consolidated tax-roll was given in evidence, and in connection therewith the original inventories and assessments of the property from which the consolidated roll was compiled. J. M. O. Menard testified that he was employed by the County Court, and compiled the tax-rolls for 1875, and testified that the figures in said consolidated tax-roll, under the head of values and taxes, &c., represented the value of the property and the amount of each person's taxes, and were intended to mean, and do mean, money in dollars and cents. The approval by the County Court of the consolidated tax-roll was also shown.

*L. E. Trezevant,* for appellants.—The County Court of Galveston county held a regular term on the 25th of January, 1875; present, the presiding justice and two associate justices; transacted some business, and adjourned to the 27th inst.

The court did not convene on the 27th instant, the presiding justice and one associate only being present. On the 28th instant, the court convened; present, a quorum; and levied the taxes in question, to wit, an *ad valorem* tax of one fourth of one per cent. for general county purposes; a special tax of one tenth of one per cent. to pay county indebtedness; a tax of one eighth of one per cent. for funding county scrip.

The tax of one fourth of one per cent. was levied under the tax-act of June 3, 1873.

The tax of one tenth was levied under the special act set out in plaintiffs' petition. (See Special Laws, 12th Leg., 2d sess., 118.)

The tax of one eighth was levied under the act to authorize counties to raise means to pay their indebtedness. Approved May 1, 1874. (Gen. Laws, 14th Leg., 189.)

The County Court did not levy a poll tax.

Plaintiffs allege that the value of their property in money and the amount of their taxes in money is not set forth upon any assessment roll of taxes, or assessed against them.

Appellants submit the following propositions:

1st. The January Term, 1875, of the County Court expired on the 27th January, 1875, and the levy of the taxes on the 28th of January, 1875, was a nullity.

2d. The special act did not authorize the levy of a tax.

3d. The tax of one eighth, or funding tax, was not apportioned as directed by the statute, and was not levied or ordered by the County Court to be assessed and collected as a tax upon property.

4th. The figures on the pretended assessment roll of taxes do not indicate money.

First, as to the validity of the levy by the County Court, on the 28th of January, 1875. The statute declares that no county tax shall be levied by the County Court, unless at some one of the regular terms. (Gen. Laws, 2d session, 1871, page 56.) This statute prescribes that a regular term of the County Court shall commence and be held on the last Monday in January, March, May, July, September, and November in every year; and that such terms shall be held by the presiding justice, with the assistance of any two or more of the other justices.

The Constitution of 1869, article 5, section 20, declares that the justices of the peace in each county, or any three of them, shall constitute a court, having such jurisdiction, etc., and when sitting as such court, the justice who resides at the county seat shall be the presiding justice.

It will thus be seen that the County Court is constituted of not less than three of the justices; that regular stated terms of the court are designated; that such terms shall be held by the presiding justice with the assistance of any two of the other justices; that no county tax shall be levied unless at some one of the regular terms.

The taxes in question were either levied at the January

Term, 1875, by a court having jurisdiction, or the proceedings were *coram non judice*, and void.

The question, then, is, was the levy of the taxes in question, on the 28th day of January, 1875, made at a regular term of the County Court?

It is important to bear in mind that the authority conferred upon the counties to impose burdens of any character upon persons or property is merely statutory, and that as its exercise may result in a divestiture and transfer of private property, this authority must be clearly given and strictly pursued. (Dillon on Mun. Corp., sec. 605.)

Possessing, as these public corporations do, a delegated power of assessment and sale of private property, often wielded by the indiscreet and the selfish, the grossest abuses would inevitably follow, if they were not held strictly within the powers granted and the means prescribed for the execution of these powers.    (Per Stuart, J., in Kyle *v.* Malin, 8 Ind., 34.)

The County Court being regularly in session on the 25th day of January, 1875, adjourned regularly to meet on the 27th day of January, 1875.   The court did not meet on the 27th January, 1875; no court was then in session; R. D. Johnson and Hugo Brosig, the only two members of the court present on the 27th January, did not constitute the court; had no power to perform the functions of a court; had no power to transact any business or to do anything on the 27th day of January, which a court might do, as, for instance, to make an order that the court do adjourn to some certain day; as well might the clerk or sheriff assume to exercise such a power, as a single member or any two members of the court.

It will be noted that the act in question (Gen. Laws, 2d sess., 1871, page 27,) does not, as does the act of December 14, 1863, (Paschal's Dig., art. 1247,) provide against such a dilemma as the one in question, by providing that should a quorum of the commissioners' court not appear at the time appointed, the sheriff, or in his absence the coroner, shall

adjourn the court from day to day for three days, and should a quorum not appear on the morning of the fourth day, then he shall adjourn the court until the next term in course, thus clearly indicating that without such statutory authority the court—a quorum—must convene at the appointed time, and be kept in session from day to day by the orders of the court, regularly made by the court as a court.

A court term is a definite and fixed time prescribed by law. (Horton v. Miller, 38 Penn. St., 270.) Certain fixed times and places were said by Spelman to be essential to the existence of a court. (State v. Roberts, 8 Nev., 239.) There is no implied power in a court to adjourn. (People v. Bradwell, 2 Cow., 445; Wright & Wallbaum, 39 Ill., 554; Cooley on Tax., 214.)

II. The special act does not authorize the levy of any tax; the power to levy a tax is not given under the authority given by the act to issue bonds and to provide for their payment.

Towns and counties possess no power to levy and collect taxes, unless under an express grant from the legislative power of the State. This is a principle, says Cooley on Taxation, page 244, that admits of no exception whatever. It is a principle universally declared and admitted, says Dillon on Municipal Corporations, section 605, that municipal corporations can levy no taxes, general or special, unless the power be plainly and unmistakably conferred.

Those who assume to seize the property of the citizen for the satisfaction of a tax must be able to show that that particular tax is authorized by general or special law. (Cooley's Const. Lim., 518, 520; Kyle v. Malin, 8 Ind., 34.)

In the construction of any grant of the power to tax, made by the State to one of its municipalities, the rule which is accepted by all the authorities is, that it should be with strictness.

There are no inherent powers in the municipalities to levy taxes; they can tax only as the State in its wisdom has thought

proper to permit; and if the State has erred in the direction of strictness, the Legislature alone can correct the evil. (Cooley on Tax., 209; Cooley's Const. Lim., 191, 488, 518.)

A strict construction in such cases is reasonable, because, presumptively, the Legislature has given, in plain terms, all the powers it has intended should be exercised. (Cooley on Tax., 200, 209.)

It is very clear, under these universally accepted rules of construction, that the special act does not authorize the County Court to provide for the payment of bonds by levying a tax for that purpose.

III. The order of the court levying the funding-scrip tax is unintelligible, and so far meaningless, as it gives no warrant for the assessment and collections of a tax. We submit that the levy of this tax is not only fatally obnoxious to this objection, but that the levy is in no sense made in compliance with the terms of the statute conferring the power to tax, and in no sense carries out the intent of the statute.

The act directs that the County Court shall proceed to levy a special tax on the assessed value of all the real and personal property of such county, and upon occupations and professions taxed by the State, and upon the polls in said county, prescribing a maximum rate for each of these three subjects of the tax.

Counties must conform to the mode and manner prescribed by the law under which they derive their power to tax. If not done in the manner prescribed, the act is a nullity and void. (Cooley's Const. Lim., 191, 488, 518; Dillon on Mun. Corp., secs. 55, 610; Blackwell on Tax Tittles, 106, 164, 447; 20 Howard, Pr. Rep., 395; 4 Hill, 76; 1 Kansas, 432.)

It is a well-settled rule of construction of delegated authority, that the authority conferred is to be strictly construed and must be closely pursued. Dillon, sec. 55; Sedgwick on Stat. and Con. Law, 466; French *v.* Edwards, 13 Wall, 506; Cooley on Tax., 175, 180, 208, 216; State *v.* Bank of Newbern, 1 Dev. & Bat. Eq., 218; Blackwell on Tax Titles, 165.

IV. Appellants submit that the figures as marked upon the consolidated assessment roll of taxes, under the head of value of property, and under the head of the different taxes, do not indicate any value in money, but are mere numerals, signifying abstract numbers, and show no assessment of property or of taxes.

This proposition was sustained in Tilton *v.* Oregon C. M. R. R., Circuit Court United States, District of Oregon, Deady, J., from Central Law Journal, vol. 1, No. 22; Hurlbutt *v.* Butenop, 27 Cal., 50; Braly *v.* Seaman, 30 Cal., 610; People *v.* Hastings, 34 Cal., 571; People *v.* San Francisco Savings Union, 31 Cal., 132.

V. Appellants submit that said inventories and the testimony of Menard was inadmissible, upon the ground that the figures on said roll exhibit a plain and obvious uncertainty, and are equally capable of different applications as to their meaning.

To show by extrinsic evidence that they who made those figures intended them to mean dollars and cents, would be to make a supposed intention operate independently of any definite expression of such intention.

The roll shows a case of a patent, incurable ambiguity. (Stephens's Dig. of Evidence, 108; Starkie on Ev., (9th ed.,) 591; Greenl. on Ev., 342.)

It is a general rule, that a patent ambiguity is always, if possible, to be removed by construction, and not by averment. (Colpoys *v.* Colpoys, 1 Jac., Eng. Chan., 451.)

The words "Texas, money," in Roberts *v.* Sharp, 1 Tex., 373, are not a patent ambiguity, but are capable of having a certain meaning given to them.

When the perusal of an instrument shows plainly that something more must be added before the reader can determine which of several things is meant by it, the rule is inflexible that no evidence to supply the deficiency can be admitted. (Gresley's Eq. Ev., 198.)

In conclusion, plaintiffs proved that the county court did

not levy a poll tax for the year 1875, and yet the court below saw no ground for enjoining its collection.

*M. E. Kleberg,* for appellee, cited Paschal's Dig., 1247, 6026, 6113, 6122, 7657, 7711; 4 Ohio, 473; Cooley on Tax., 36, 176, 198, 219, 220; 34 Tex., 283; 2 Tex., 224; Cooley's Const. Lim., 78; 28 Tex., 648; 31 Tex., 571; 16 Tex., 338; 12 Tex., 402; 15 Tex., 321; 20 Tex., 667; Hale *v.* City of Renosha, 29 Wis., 599; State *v.* Bremond, 38 Tex., 120; Roberts *v.* Short, 1 Tex., 373; Blessing *v.* City of Galveston, 42 Tex., 641; High on In., secs. 355, 356, 362; Rio Grande R. R. Co. *v.* Scanlan, 44 Tex., 649.

MOORE, ASSOCIATE JUSTICE.—This suit was brought by appellants against appellee, as collector of taxes for Galveston county, to contest the validity of the following taxes, to wit:

1. An *ad valorem* tax of one fourth of one per cent., levied for general county purposes for the year 1875.

2. A tax of one tenth of one per cent., levied to pay the interest, and provide a sinking fund to liquidate certain bonds issued by the county of Galveston, under a special act of the Legislature authorizing their issue, passed November 29, 1871.

3. A tax of one eighth of one per cent., levied under an act of the Legislature, to pay the interest on registered county scrip.

4. A county poll tax.

On the trial of the cause in the district court, judgment was rendered in favor of the defendants, and the plaintiffs gave notice of an appeal; but they failed to perfect their appeal by giving bond, with two or more securities, as required by the statute regulating appeals to this court. No objection, however, was made by appellee to the bond found in the record. If, therefore, the bond had been of such a character as to give the court jurisdiction of the case, it would be unnecessary for us to notice its deficiencies. But such, in our

opinion, is not the character of the instrument which was
filed in the District Court for the purpose of perfecting the
appeal taken by the plaintiffs, and by reason of which they
are asking of this court a reversal of the judgment. The
pretended appeal bond copied in the transcript is signed
only by three of the plaintiffs, and has no sureties to it
whatever. An appeal bond is an essential requisite to the
jurisdiction of the court, except in the cases in which it has
been dispensed with by statute. That the individual obliga-
tion or bond of the appellants cannot be regarded as an
appeal bond in the sense of the statute, is clearly deducible
from its plain language.

The appeal not having been perfected, and this court hav-
ing acquired no jurisdiction of the case, the only judgment
which can be rendered by us is, that it be dismissed. How-
ever, as the questions presented by the assignment of errors
have been fully discussed by counsel, and maturely consid-
ered by the court, it may, perhaps, tend to avoid future liti-
gation for us to briefly indicate the conclusions at which we
have arrived in regard to them.

The objection that these taxes had not been legally levied,
because this had not been done at or during a regular term
of the County Court, is untenable. The court convened and
was duly organized at the time prescribed by law. When a
court is organized and opened for a regular term, the term
continues until it is ended by order of final adjournment, or
until the efflux of the time fixed by law for its continuance.
The sessions or sittings of the court during term are entirely
within the discretion and control of the court. And its
orders in respect thereto are intended for its convenience
and the convenience of parties interested in its proceedings.
Hence they may be altered, revoked, or annulled from time
to time, as the exigency of the business to be transacted may
require. The orders of adjournment of its sessions from day
to day, or to a particular hour of the day, are mere announce-
ments of its proposed or intended order of transacting the

business to come before it during the term. But certainly the failure of the court to meet at the hour or on the day to which it had thus taken a recess, can in no way affect or put an end to its term.

The objections to the levy of the tax of one tenth of one per cent. have been considered and decided in the case of George *et al. v.* Dean, and need not be here noticed.

The levy of the tax of one eighth of one per cent. is not so full, clear, and explicit as is appropriate in orders of the court of such character. Nevertheless, it cannot be said, when we look to the entire order, that the levy is void. The amount and character of the tax, and of the property upon which it is levied can be sufficiently inferred and understood from the order to support the levy.

The objection that in the levy of this tax there is a discrimination in favor of occupations, seems not to have been made in the court below. If it was in the mind of the pleader when he drew the petition, it is not set forth with sufficient clearness to call the attention of the court to it. The levy is only for one half of the amount which the court was authorized to impose upon property; and if a like tax should have been imposed on taxable occupations, it does not appear that it has not been done.

The levy of a county poll tax was made by the Legislature; therefore there was no necessity for a levy of it by the County Court, if it had the authority to do so. (Paschal's Dig., art. 7711.)

It is also objected that the figures, upon the consolidated assessment roll, in the columns for the value of property, and for the different kinds of taxes, do not indicate any denominate value of money, as it cannot be told whether they indicate eagles, dollars, cents, or mills; but this, at most, is a mere defect in the form and manner of making up the roll. The proper import of these figures, however, when the assessment roll is looked at in the light thrown upon it by the different statutes in regard to the levy and assessment of taxes,

and the instructions of the comptroller upon the subject, is so obvious, that it may well be doubted whether the alleged defect is of any significance whatever. It certainly affords no ground for the interposition of a court of equity, or warrant for an injunction against the collection of the tax the amount of which is clearly and correctly shown by the assessment lists. It has no doubt been held, in cases where there were like defects or irregularities in the warrant or authority under which property had been sold for taxes, that they were fatal to the title of the purchaser. But it is well known, unless the general rule has, as with us, been modified by statute, that it is usually held that it devolves upon the purchaser at a tax sale to show, in support of his title, the strictest compliance with every formality, not only in the levy and assessment of the tax, but likewise in the form and manner of making such sales. The question in such cases as are here referred to, is altogether different from that presented in this case, and was decided under an altogether different state of law from that applicable to like questions with us.

There being no valid appeal bond to give this court jurisdiction of this case, it is dismissed.

DISMISSED.