## No. 5687.

### R. B. HARWOOD ET AL. *v.* THOMAS N. H. WYLIE.

1. ADMINISTRATION.—In 1851 an application was made to the probate court of a county in which the decedent owned no property at his death, which occurred elsewhere, and a pretended administrator assumed to administer the estate under an order which granted administration on "this estate," without specifying the name, but which was attached to a list of fourteen estates, that of the decedent being one of them. The decedent fell at the massacre of the Alamo, and the letters of administration were issued fifteen years afterwards. Land represented as being located in another county, under the headright, bounty and donation certificates, was ordered to be sold, and was sold, as quickly as the forms of law permitted, to pay the cost of the court (sixty dollars), and the county clerk (W. R. Baker) purchased it. The bounty certificate was not located on the land sold until eight months after the sale. In a suit involving the validity of the administration and sale, *held:*

    (1) There was no valid order granting letters of administration; had there been it would have been void.

    (2) Had the order granting administration been valid, the order of sale and confirmation of sale of land not then appropriated by location would have passed no title.

APPEAL from Wichita. Tried below before the Hon. B. F. Williams.

Suit in trespass to try title brought by appellees. The order of the court January 27, 1851, attempting to grant letters upon fourteen estates is as follows:

"Estate of Charles Dupollion, George Voss, Isaiah Dickson, Frank Gray, George Green, William Harper, Dennis Mahoney, Richard Starr, James Dunkin, Daniel Broce, H. Z. Lewis, Charles Zanar, George Wiggin and Robert Evans. In the matter of the application of Justin Castania for administration of this estate, it appearing to the court that due and legal notice thereof was given as the law required, and no one appearing to contest or oppose the same, it is ordered, adjudged and decreed by the court that Justin Castania be, and he is hereby, appointed the administrator of this estate, with full power as such, subject to the orders of court. It is further ordered that he file an inventory of the effects of

said estate, under oath and according to law. It is further ordered that he file a bond in double the value of the inventory as approved, with sureties, etc., and upon so doing it is ordered that letters of administration issue according to law. And it is ordered that the estate be continued."

The orders at February, March, April and June terms are continued. "Inventory of the estate of Robert Evans, deceased, one-third league headright certificate, number fifty-eight, dated June 7, 1851," and one thousand nine hundred and twenty acres bounty certificate, number eight hundred and thirty-five, dated June 6, 1851, and six hundred and forty acres donation, number two hundred and ninety-nine, same date, and twenty-four dollars public debt script was filed by Castania June 25, 1851. Bond filed same day approved by W. R. Baker, clerk.

At the June term (July 2) 1851, order of continuance set aside. Eight entries are listed, including estate of Robert Evans in the same form as above set forth, and a general order follows. The administrator appearing and having filed his inventory, duly appraised the same having been examined is hereby approved. It is ordered that the inventory be entered of record. The said administrator thereupon filed his bond, etc., the same is approved. It is also ordered that the said bond be entered of record. It is also ordered that letters of administration issue according to law. The bond filed is for the faithful performance of the duties as administrator of the Evans estate.

On July 17, 1851, J. Castania filed his petition as administrator of Robert Evans to sell the one thousand nine hundred and twenty acres of land located by virtue of the bounty certificate, the one-third headright league, and the six hundred and forty acres donation, all of which was alleged to be located in Navarro county, that is to sell a sufficient amount of the land to pay the costs of court and a bill of two hundred and sixty-two dollars and twenty-five cents, presented by the administrator for locating the lands which he also asks the court to approve. The costs he estimates at sixty dollars. The bill includes ten dollars for procuring certificates of bounty, one-third headright, and donation. July 28, 1851, order of sale was granted to the administrator to sell all the said lands at public outcry on credit of twelve months, also the twenty-four dollar scrip. The admin-

istrator's report of sale was filed September 19, 1851; it states the lands and scrip were all sold at public outcry on credit of twelve months to William R. Baker, for three hundred and five dollars. The report is sworn to by the administrator before W. R. Baker, clerk.

At the September term (September 29), 1851, the court approved and confirmed the sale and ordered deed made to Baker upon his paying the amount of his bid in cash as he had elected to do. Plaintiff proved that the bounty warrant number eight hundred and thirty-five for one thousand nine hundred and twenty acres of land issued to Robert Evans on the sixth of June, 1851, was located in the counties of Parker and Palo Pinto on the twenty-fourth of May, 1852. It was floated and located upon the land in controversy, which was patented to Robert Evans September 3, 1868.

Plaintiff also proved by the county surveyor of Navarro that the official records of his office showed no file or survey in Navarro county by virtue of the bounty warrant number eight hundred and thirty-five for one thousand nine hundred and twenty acres issued to Robert Evans the sixth day of June, 1851. At this time Parker and Palo Pinto counties were in the territory of Navarro, not created.

*Coombs & Gano*, for appellants: Where the petition for letters of administration shows no facts giving the court jurisdiction of the estate, the administration granted thereon is a nullity. (Paschal's Dig., art. 1260; Hearn v. Camp, 18 Texas, 521; Walrup v. Jones, 23 Texas, 491; Duncan v. Veal, 49 Texas, 610; Merriweather v. Kennard, 41 Texas, 277; Murduson v. White, 54 Texas, 82.)

The petition for letters of administration must state the facts giving the court jurisdiction over the estate. (Paschal's Digest, art. 1260; Hearn v. Camp, 18 Texas, 551; Walrup v. Jones, 25 Texas, 492; Duncan v. Veal, 49 Texas, 610.)

To support an administrator's deed, a valid administration, a valid order of sale, a sale, and valid confirmation of the sale must be shown. (Withers v. Patterson, 27 Texas, 496, 497; McNally v. Haynes, 59 Texas, 585.)

*Wm. W. Flood* and *Hunter & Stewart*, for appellee: Every presumption will be indulged in favor of the validity of the judgments of courts of general jurisdiction assuming to act

upon a subject matter within the ordinary scope of their authority. (Paschal's Digest; Fitch v. Boyer, 51 Texas, 336; Murchison v. White, 54 Texas, 78.)

The probate courts of Texas, have general cognizance of the estates of decedents, and in that sphere are courts of general jurisdiction, and the orders and decrees made in reference to estates being administered by them are entitled to the same presumption of verity when called in question in any collateral action attacking their validity as the judgments of any other court of record of general jurisdiction. (Guilford v. Love, 49 Texas, 715; Murchison v. White, 54 Texas, 78.)

That the judgment of a court of general jurisdiction imports such absolute verity that in collateral attack thereon, the presumption of their validity is so conclusive that evidence *aliunde* or *dehors* the record will not be heard to impeach their validity. (Fitch v. Boyer, 51 Texas, 336, 337; Murchison v. White, 54 Texas, 78, 79.)

COLLARD, JUDGE      We can not give our assent to the validity of the administration of Robert Evans's estate. Evans perished at the Alamo with Travis on the sixth of March, 1836, having no fixed place of residence in the State. On the tenth day of January, 1851, nearly fifteen years after the death of Evans, one J. Castania applied to the county court of Harris county for letters of administration upon his estate, alleging that decedent had no fixed domicile, and no kindred in the State. The application did not show that there were any debts against the estate, nor were there any in fact.

The statute in force at the time the application was filed required that, if deceased had no domicile or fixed place of residence in the State, but died in the State, letters of administration shall be either in the county where his principal property was at the time of his death, or in the county where he died. (Paschal's Digest, 1260.)

The pretended order of administration does not designate the estate of Robert Evans. There is a list of fourteen estates by name, and an order that Justin Castania be and he is hereby appointed administrator of *this* estate. Several terms later, on July 2, 1871, the minutes of the court show a list of eight of the estates in the former list, including the estate of Robert Evans, and an order reciting that the administrator had filed his inventory and bond, which are approved and ordered to record,

and concluding as follows: "It is ordered that letters of administration issue according to law." In neither of the orders is any particular estate mentioned. Fifteen days after the record order, Castania, as administrator of the Robert Evans estate, applied for sale of a sufficient quantity of the estate (consisting of three surveys, nineteen hundred and twenty acres by virtue of Evans' bounty certificate, one-third of a league his headright, and six hundred and forty acres his donation, located in Navarro county, Texas), to pay the costs of court, estimated at sixty dollars, and the administration charges for obtaining the certificate, ten dollars, and locating the same on the land sought to be sold two hundred and fifty-two dollars and twenty-five cents. The sale was ordered on a credit of twelve months; the sale of all the land was made to W. R. Baker, clerk of the court, for three hundred and five dollars on twelve months time; report made and confirmed; the order of confirmation allowing Baker to pay the amount bid in cash, he having so elected, and deed ordered upon such payment. The order of confirmation was made September 29, 1851.

There ought to be some limit of time after death when administration could be taken out upon an estate, even in the absence of a statute. In case of a second administration upon the same estate it seems the time is fixed at such period as would raise a presumption that all debts had been paid. The statute as revised fixes the time at four years after death of the intestate. (Waldrup v. Jones, 23 Texas, 491; Revised Statutes, art. 1827.) We think the administration attempted to be taken out upon the Evans estate should not be recognized. It was attempted too late, and, besides, there are other reasons for it. The proceedings in the probate court show that the administration was intended to consume the estate in costs and administrator's fees. The whole estate was so converted by the administrator and the officers of court in as brief a time as it could have been done under the forms of law. The administration was not taken out in the county where the statute declared it should be, but in another remote county where the parties interested in the estate had no reason to expect it, thus rendering is more easy to plunder and misapply the property without the knowledge of the heirs; and all this was done nearly fifteen years after death of intestate. Courts should not hold an administration valid even in a collateral attack when it is shown to have been obtained for fraudulent purposes

and by methods violative of express law. We do not think the probate court acquired jurisdiction of the estate; but it may be admitted that the administration could have been legally obtained at the time and in the county where it was attempted; still it can not be said that there were any orders of the court granting the administration. The orders only pretended to appoint an administrator of one estate, which one out of the list of fourteen in the first order or out of the eight in the second order can not be ascertained. Neither of the orders refers to any particular estate.

We can not see that the orders should be made to apply to any particular one of the estates. The orders are not definite. They purport to grant administration upon one estate out of a number without stating which one; in such case they should be held to apply to none of them.

But again: It might be conceded that the administration upon the Robert Evans estate was valid, the sale would convey nothing to Baker in the absence of proof that the land sold was at the time of the sale located by virtue of the certificate now relocated on the land in controversy. The sale was made and confirmed before the thirtieth day of September, 1851. It was in proof by the Commissioner of the General Land Office that the certificate for nineteen hundred and twenty acres was not located until the twenty-fourth day of May, 1852. The county surveyor of Navarro county testified that the records of his office showed no location of the certificate in his county. It seems from this that the land sold had not been appropriated by the certificate at the time of the sale, but was some eight months afterwards. The land was sold, not the certificate. Had the certificate been located on the land at the time of the sale, that is, if the certificate had been filed on the land so as to sever it from the public domain at the time of the sale, the effect would have been to convey the certificate; not so if the certificate had not been located. The certificate in such case was not sold, and when it was floated and relocated on the land in controversy, the land was indisputably the property of Evans's estate.

We conclude from the foregoing that the judgment of the court below ought to be reversed and here rendered in favor of defendants; that plaintiff, Thomas N. H. Wylie, take nothing by his suit against defendants, appellant in this court, and that they go hence without day.      *Reversed and rendered.*