## In re CAMPBELL'S ESTATE.
### No. 11631.

Court of Civil Appeals of Texas. Galveston.
June 15, 1944.

Rehearing Denied July 6, 1944.

P. Harvey, of Houston, for appellant.

Fouts, Amerman & Moore and **W. J.** Howard, all of Houston, amici curiæ.

GRAVES, Justice.

This appeal by L. J. Beall—under a cost-bond styling himself as administrator of the estate of Thomas Campbell, deceased, and made payable to unnamed appellees, as well as to the respective judges of the county and district courts of Matagorda County, the officers of court, and others—is from a judgment of the district court of Matagorda County sitting, without a jury, in probate on an appeal from the county court of Matagorda County, in material substance as follows:

"On this 31st day of January, 1944, in open court and at a regular term of the Court, came on to be heard on a trial de novo the appeal of L. J. Beall from the order and judgment of the County Court of Matagorda County, Texas, made and entered in said cause on the 30th day of December, 1943, setting aside the order of said Court made and entered on the 4th day of November, 1943, approving the report of L. J. Beall, as temporary administrator and appointing the said L. J. Beall as administrator of said estate, and setting aside all other orders entered in said estate, and dismissing said estate from the docket; and no jury having been demanded, and the matters and issues of fact as well as of law being submitted to the Court, and the Court having heard the evidence and argument of counsel and being in all things fully advised, is of the opinion that such appeal is not well taken, that the said County Court was without power and jurisdiction to appoint an administrator of said estate, and was authorized and empowered to set aside and annul the said order so entered in said County Court on the 4th day of November, 1943, appointing the said L. J. Beall administrator of said estate, as also all other orders entered in said estate, and dismissing said estate from the docket, and the action of the County Court in so doing is hereby approved; and it is therefore ordered, adjudged, and decreed that the said order of the said County Court, made and entered on the 4th day of November, 1943, approving the report of L. J. Beall as temporary administrator of said estate and appointing the said L. J.

Beall as administrator of said estate and ordering letters of administration to issue to said L. J. Beall, as well as all other orders made and entered in said estate, be and the same are hereby set aside and annulled and shall hereafter be held for naught, and that said cause and estate be dropped from the docket of said County Court.

"It is further ordered that the said L. J. Beall pay all the costs in this appeal and proceedings, and that this order and judgment be, by the Clerk of this Court, certified to the said County Court for observance."

Appellant's points for a reversal here are, in epitome, these:

#### "First Point.

"The judgment of the County Court of Matagorda County rendered at the November term, 1943, appointing appellant administrator of the estate of Thomas Campbell, deceased, was a valid judgment on its face and on the record, and, at the expiration of said November term on December 26th, 1943, it became final and immune to collateral attack; the order entered thereafter, on December 30, 1943, by the County Judge of Matagorda County, in vacation, attempting to set aside the said judgment rendered at the November term, was coram non judice, and void; the District Court erred in rendering judgment that the County Judge, after the expiration of such November term, had the power to annul, vacate, and set aside the judgment rendered at the November term, granting administration on said estate and appointing appellant administrator.

#### "Second Point.

"The judgment of the district court should be reversed, because the appeal to it was from the order entered by the County Judge on December 30th, 1943, and the only matter before the district court for adjudication was the validity of that order; and the judgment of the district court holding that the judgment of the County Court, rendered at the November term, 1943, granting administration on the estate of Thomas Campbell, deceased, was void for want of jurisdiction, was a collateral attack upon said judgment, which is regular on its face and on the record.

#### "Fourth Point.

"The judgment of the County Court of Matagorda County, rendered on November 4, 1943, granting administration on the es-

714

tate of Thomas Campbell, deceased, and appointing appellant administrator thereof, recites due service and necessity for administration, and all jurisdictional facts, which are conclusive on this collateral attack, and cannot be impeached by evidence aliunde.

"Fifth Point.

"The County Court of Matagorda County sitting in matters probate is a court of general jurisdiction and its judgments import absolute verity, and, after the term at which they are rendered expires, they can only be set aside by direct suit."

When the undisputed facts appearing in this record are looked to, it is determined that none of these presentments should be sustained.

In the first place, as the statement of facts brought up discloses, the district court had before it, not only all the successive proceedings so taken in the county court in the matter of the claimed estate, but also the full testimony of the judge of that court, before whom they had been taken, as to the attending facts, both upon his respective appointments—on merely the same showing—of the appellant as temporary and permanent administrator, and on his later setting them aside, and dismissing all then-pending orders and entries, on December 30th of 1943.

The gist of the cause thus presented to the trial court was this:

The appellant, a volunteer having no interest in or connection with the alleged estate sought to be administered, made an application to be appointed temporary administrator of the claimed estate of one Thomas Campbell, for the sole purpose of bringing a land suit in its behalf; it averred that Thomas Campbell was dead, that petitioner was informed and believed that he was a nonresident of Texas at the time of his death, that the time and place of his death was not known to petitioner; that at the time of his death Thomas Campbell owned an estate, consisting principally of real estate in Matagorda County, of the probable value of $250, which was then claimed and held adversely by other people under the statutes of limitation; that, therefore, a necessity existed for the immediate appointment of an administrator to recover such property for Campbell's estate, in order that the running of the statutes of limitation might be tolled; and that the petitioner is not disqualified.

Appellant, L. J. Beall, was appointed temporary administrator on September 14, 1943, and authorized to file suit to recover land. He immediately contracted with attorneys (the same ones now representing him on this appeal) to prosecute the suit, giving them an undivided fifty per cent of any recovery in land, or money, as a fee; thereafter an inventory was filed by him and his appointment as administrator was made permanent on November 4 of 1943, but without any further or additional showing. It appeared from the inventory so filed that the alleged estate of Thomas Campbell consisted of a claim to the "Northeast one-third (or about 1476 acres) of the Battle, Berry & Williams league on Linnville Bayou, in Matagorda and Brazoria Counties, Texas, conveyed to a trustee in trust for the deceased, in 1834." A copy of this deed was also offered in evidence, which showed that it was dated the 28th day of February, 1834.

It thus appears that the one instrument, upon which alone these administration proceedings were based, was 110 years old at the time appellant filed his application, the substantially-complete recitations of which have just been stated; it did not, however, contain any averments: (1) That four years had not elapsed since Campbell's death (the inevitable inference to the contrary being that vastly more time had intervened); (2) that there existed no debts due by the estate—especially none that there were two debts due, as required by R.S. Article 3370, Vernon's Ann.Civ.St. art. 3370; (3) none that he did not leave a will.

In a word, the sole objective declared upon was that—perforce alone of the alleged ancient instrument of February 28, 1834, purporting to convey land in trust for Thomas Campbell—deceased at the time of appellant's application for letters on his estate—he, appellant, a stranger without privity of any sort to Campbell, his estate, or the land, be given the power to file a suit to recover such land against third parties then alleged to be in possession thereof under a limitation claim thereto.

The County Judge's testimony was:

"Q. What evidence was offered in the County Court at the time of the presentation of that application for administration? A. The application was read, I think, at the time; when it was indicated that it was more than four years, I remarked: 'What do you mean, this long a time after

decedent's death?' And I think time was consumed to produce the statutes as have been brought forward in Vernon's (Article 3325), stripped of the emergency and the caption. I think Mr. Harvey had an instrument, and I think I accepted his statement as to the truthfulness of the application, as set forth, and gave my approval to the appointment, based on that general statute, not knowing of the emergency or the caption of the original enactment.

"Q. Was there any evidence offered as to the existence of any debts of the decedent? A. None, none at all.

"Q. Was there any proof that the decedent, Thomas Campbell, left or did not leave a will? A. There was no evidence about a will. I think that Mr. Harvey's statement that the man had been dead a long time—I merely indulged a violent presumption that he was dead by reason of that length of time, and, as I say, approved the appointment on the basis of that statute (Article 3325), as brought forward in Vernon's, it appearing to be a rather general statute for the recovery of property belonging to an estate.

"Q. Of course, the grounds of necessity for the appointment of an administrator were only as set out in the application? A. That's all.

"Q. There was no proof of the facts stated in the application at all, was there, no testimony of those facts, I mean? A. I don't remember whether Mr. Harvey was sworn or not; I believe he was not; I think I showed him the courtesy that we usually do to lawyers in accepting statements of that kind.

"Q. As I understand it then, he represented to you that Mr. Campbell had been dead a long, long time? A. I think he had an instrument showing—I didn't read it, but under which he was alleging the claim, supporting his application, under this general statute here, and it was apparently a general estate.

"Q. Was that an instrument, Judge Lewis, dated some time in February, 1834? A. I couldn't say, except that it indicated that Mr. Campbell was dead a long time, I mean, he was apparently dead a long time, but I don't believe it was alleged in the application anything but that he was dead.

"Q. Was there any proof of his death, other than these statements by Mr. Harvey that the man had an instrument way back yonder? A. No, sir.

"Q. And that he must have been dead a long, long time? A. No, sir, no proof.

"Q. There was no proof at all as to when he died? A. No, sir.

"Q. Was there any proof or suggestion as to whether or not he left a will or left heirs? A. No, there was no statement about a will.

"Q. Was there any statement about whether he left heirs or not? A. I believe that Mr. Harvey said that he represented one of the heirs—I am not sure.

"Q. One of the heirs of Campbell, who had been dead a long, long time? A. Yes, sir.

"Q. Now, Mr. Lewis, Judge Lewis, subsequent to the appointment of this administrator, did you have occasion to examine the Act that you say has been brought forward in the statute? A. I did.

"Q. I will ask you if that is an official copy of the Act that you refer to that you subsequently examined? A. Yes, sir.

"Q. In entering your order, Judge Lewis, did you consider the manner and form of the presentation of the application and the allegations in it? A. I considered the application in connection with that statute, as it appears with the caption and the emergency clause.

"Q. Yes, sir, after you reached whatever conclusion you reached, you set aside the order appointing this Administrator? A. I did.

"Q. I believe that's all."

In the second place, it seems clear—as both lower courts finally held, on being fully advised in the premises—that appellant simply mistook the proper legal redress for any injury that may have resulted to somebody down under the Thomas Campbell for whose benefit the ancient instrument, by virtue of which appellant herein sought an administration, may have been originally executed and delivered; in other words, whatever the heirs or other successors in right of that Thomas Campbell might establish in the way of a claim or title to the particular land in Texas so sought to be administered upon by this appellant, which is a question in nowise at issue here, this appellant, on the face of the record, wholly failed to show by either pleadings or proof that the county court of Matagorda County had any jurisdiction over such land as the estate of the deceased Thomas Campbell he essayed to act for.

He seems to have assumed from the general wording of R.S. Article 3325, without regard to its caption, or history, or cognate acts, that he could merely allege that Thomas Campbell had an interest in land in Matagorda County that other people were in possession of under a claim of right thereto, and that such situation made an administration upon Campbell's estate necessary so that a suit at law to recover the property for it might be instituted, and that he himself was not disqualified to apply therefor. Had he consulted both the caption and the emergency clause, which were essential parts of that statute, he would have found that it was a special one, applying only to the receipt or recovery of moneys in the nature of insurance from the United States of America for veterans' war risk protection, and nothing else, its full terms being as follows:

"Letters of Administration When Recovery of Moneys From the United States
Is Involved.
S.B.No.123.)
Chapter 132.

"An Act amending Article 3325, Chapter 4, Title 54 of the Revised Civil Statutes of the State of Texas, adopted at the regular session of the 39th Legislature, by adding thereto a provision authorizing the county courts of this State to grant letters of administration upon the estates of certain persons without regard to the date of death when *such administration is necessary in connection with the receipt or recovery of moneys due by the United States of America,* and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. That Article 3325, Chapter 4, Title 54 of the Revised Civil Statutes of the State of Texas, adopted at the regular session of the 39th Legislature, be amended so as to hereafter read as follows:

"Sec. 2. Article 3325. Time to File. All applications for the grant of letters testamentary or of administration upon an estate must be filed within four years after the death of the testator or intestate; provided that this Article shall not apply in any case where administration is necessary in order to receive or recover funds or other property due the estate of the decedent.

"Sec. 3. The fact that many veterans of the World War to whom War Risk Insurance was granted by the United States of America died more than four years ago and their insurance was made payable in monthly installments to beneficiaries designated by them, and the fact that under the statutes of the United States such insurance upon the death of the designated beneficiary reverts to the estate of the deceased soldier, thereby necessitating the appointment and qualification of an administrator to recover and receive the remainder of such insurance from the United States of America and the further fact that there is at the present time no adequate law providing for the appointment of administrators where more than four years have elapsed since the death of the testator or intestate create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each House be suspended, and said rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted." Acts 1929, c. 132. See Article 3325, Vol. 9, Vernon's Texas Civil Statutes, and footnote citations; Anderson v. Penix, 138 Tex. 596, 161 S.W.2d 455.

Indeed, succeeding Article 3370, as amended by the 46th Legislature in 1939, see Art. 3370, Vernon's Texas Civil Statutes, Vol. 9, and footnote citations, seems to have dissipated any generality or uncertainty that may have theretofore existed as to what pleading and proof should constitute a sufficient necessity for the issuance of letters of administration upon the estates in Texas of deceased persons.

That statute—as is especially emphasized in its emergency clause—authoritatively determined that only in these circumstances may the jurisdiction of the probate court be properly invoked for such an administration, to-wit:

"1. That the person is dead.

"2. That four (4) years have not elapsed since his decease prior to the application.

"3. That the court has jurisdiction of the estate.

"4. That there is a necessity for an administration upon such estate; such necessity shall be deemed to exist if two or more debts exist against the estate, or if or when it is desired to have the county

court partition the estate among the owners in accordance with the provisions of Chapter 24, Title 54, Revised Civil Statutes of Texas, 1925.

"5. That the person to whom the letters are about to be granted is entitled thereto by law and is not disqualified."

■ A recurrence to the facts already given demonstrates that at least essentials Nos. 2, 4, and 5 were in no manner complied with; hence no necessity whatever, within the meaning of our so recently enacted law, was shown for any administration.

In Sanders v. Hart, Tex.Civ.App., 171 S.W.2d 531, there being no debts and no property to partition shown, the court, in effect, determined that no administration was warranted, under circumstances materially similar to those this appellant adduced, and that the Legislature—in enacting Article 3370—did not contemplate the allowance of an administration in any such conditions.

■ Wherefore, the county judge of Brazoria County, it is held, had no other recourse than to set aside his original order, and to hold that he had never had any jurisdiction to appoint appellant as such administrator. See Galveston, H. & S. A. R. Co. v. Blankfield, Tex.Civ.App., 253 S.W. 956 and 13 Tex.Jur., Section 119, page 700; also same volume, page 668, paragraph 83; Angier v. Jones, 28 Tex. Civ.App. 402, 67 S.W. 449; Stone Cattle & Pasture Co. v. Boon, 73 Tex. 548, 11 S. W. 544; Duncan v. Veal, 49 Tex. 603; Anderson v. Penix, 138 Tex. 596, 161 S. W.2d 455.

■ In the third place, appellant's point raising the question of collateral attack thereon and urging that the county court's order appointing him as administrator was, (1) immune thereto because valid upon its face, and (2) was unaffected by the court's December 30, 1943, effort to set it aside, because entered after the expiration of the court's term, are likewise thought to be inept, upon these among other considerations:

(1) For the reasons already given, the November 4th appointment order was never a valid judgment upon either its face or the record, since the vice thereof so appears in the record itself, showing that the court had no jurisdiction to enter the same.

(2) In any event, however, the November term of 1943 of that court had not expired on December 30 of 1943, but had remained in session up· to and inclusive of that date for all probate matters, since Article 1961 of the Act of 1929, Vernon's Ann.Civ.St. art. 1961, expressly so recited in its concluding proviso, to-wit:

"Art.1961. Terms of court.

"The County Court shall hold at least four terms for both Civil and Criminal business annually, and such other terms each year as may be fixed by the Commissioners' Court. After having fixed the times and number of the terms of a County Court, they shall not change the same until the expiration of one year. Until, or unless otherwise provided, the term of the County Court shall be held on the first Monday in February, May, August and November, and may remain in session three weeks; provided, said court shall be open at all times for the transaction of probate business."

Not only so, but this concluding provision of the quoted act was fully authorized by the Constitution in Article V, Sections 16 and 29, Vernon's Ann.St., such authority in the county court being thus expressly conferred in Section 29: "Said court shall dispose of probate business either in term time or vacation, under such regulation as may be prescribed by law."

■ In other words, without detailed discussion of the matter, the conclusion seems clear under this record and the law that each term of the county court of Matagorda County, regardless of when it expired for ordinary civil and criminal business, did not expire as to such probate matters as this administration proceeding was until the next term thereof began—that is, that such court should remain open at all times for the transaction of probate business. Articles 1776 and 1777, Revised Statutes 1914; Article 1961, Revised Statutes 1925, Vernon's Ann.Civ. St. art. 1961; Labadie v. Dean, 47 Tex. 90; Hart v. Hart, Tex.Civ.App., 170 S.W. 1071; Western Union Tel. Co. v. Kerr, 4 Tex. Civ.App. 280, 23 S.W. 564.

■ In the fourth and final place, the appellant wholly failed, as recited supra, to either allege or prove any sufficient grounds for, or jurisdiction of the court over, the administration he claimed under, for the compelling reason that he sought it over 100 years after the single supporting trans-

action—the giving of the instrument of February 28, 1834—had passed.

After such inordinate and unreasonable lapse of time, he could not possibly have shown any title to the designated land, since it would meanwhile have inevitably passed by grant, devise, or under the statute of descent and distribution, to other parties, that is, grantees, devisees, or descendants, of the long dead Thomas Campbell he sought to claim under. Saul v. Frame, 3 Tex.Civ.App. 596, 22 S.W. 984; Martin v. Robinson, 67 Tex. 368, 375, 3 S.W. 550; Blair v. Cisneros, 10 Tex. 34, 35; Duncan v. Veal, 49 Tex. 603; Paul v. Willis, 69 Tex. 261, 7 S.W. 357; Harwood v. Wylie, 70 Tex. 538, 7 S.W. 789; Article 3325, Revised Civil Statutes.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.