CHARLES SAUL ET AL. v. D. A. FRAME ET AL.

No. 159.

1. **Bill of Exceptions.**—Matters excepted to, to be considered on appeal, if shown by bill of exceptions, it must appear that the bill was presented to the trial judge for allowance within ten days after the trial.   If by statement of facts, it must appear that the matter was called to the attention of the court within ten days from end of the trial, and that the statement of facts was filed before the adjournment of the term.

2. **Administration Sale—Irregularities.**—It has been uniformly held by our Supreme Court, that a purchaser at an administration sale who has purchased in good faith will be protected, if he show an order for sale and of confirmation, or acts of the court amounting to a confirmance of the sale, where the grounds that confer jurisdiction upon the court to administer the estate exist. See irregularities in the administration held not to affect a sale.

3. **Jurisdictional Facts — Presumption.** — In this case, administration was opened by a court of general jurisdiction in probate matters, and no proof appeared of the nonexistence of the facts that would confer jurisdiction upon the court (County Court in 1852) unless resort is had to inference and presumption. But the rule is, when a court of general jurisdiction assumes to act within the limits of its ordinary powers, all presumptions will be indulged in support of the legality of its action, and not against it.

4. **Same.**—The attack upon the proceedings of the County Court here is collateral.   The rule is familiar, that in such cases the action of the court must be upheld if facts *could have existed* that would authorize the action taken.

5. **Same—Case in Judgment.**—The fact that twelve years elapsed after the death of Ryan before the administration was opened upon his estate, affords a strong presumption that the debts, if any existed, had been paid; but it is only a presumption, and the jurisdictional fact of debts by the estate *could exist* in face of the presumption.   The administration is held valid.   That none were paid does not negative their existence.

**6. Case Approved.**—Martin v. Robinson, 67 Texas, 368, adhered to, as to jurisdictional presumptions in favor of acts by Probate Courts.

**7. Jurisdictional Presumptions of Probate Courts.**—In administration under the Probate Act of 1848, to determine whether an administration is void or not, the courts should look, not only to the time that elapsed before administration was applied for, but to the entire record of the proceedings, and ascertain therefrom whether or not there was a necessity, or an apparent necessity, for the administration; whether the application was made in good faith to benefit the estate by those interested to take care of it, and who were entitled to administer.

ERROR from Williamson.    Tried below before Hon. J. C. TOWNES.

*W. K. Makemson* and *James H. Robertson*, for plaintiffs in error.

1. The pretended administration on the estate of Edward Ryan, deceased, was void, and the deed purporting to have been executed by John Ryan, as administrator of said estate, to James O'Neal, was ineffectual to pass the title to the certificate; therefore, it was error for the court to admit in evidence the said deed or the copy of probate records from San Patricio County.    Land and Cattle Co. v. Boon, 73 Texas, 554; Blair v. Cisneros, 10 Texas, 35; Withers v. Patterson, 27 Texas, 494; Francis v. Hall, 13 Texas, 189; Wardrup v. Jones, 23 Texas, 489; Merriweather v. Kennard, 41 Texas, 273; Duncan v. Veal, 49 Texas, 604; Paul v. Willis, 69 Texas, 264.

2. The administration, being applied for and granted twelve years after the death of Edward Ryan, when as it appears from the entire record there were no debts against his estate, was void.

3. The law would not permit two estates to be administered in the same case by two administrators, and it would not permit the sale of property for the sole purpose of paying cost of administration when there were no debts, and therefore the sale was void.

4. If the administration was valid, then Mathew and John Ryan, both having qualified as administrators of the estate of Edward Ryan, deceased, under the law at that time to make a valid conveyance, they must both have joined in applying for the sale and in executing the deed, and therefore the conveyance of John alone is void.    Hart v. Rust, 46 Texas, 556; McLane v. Belvin, 47 Texas, 493; Blanton v. Mayes, 58 Texas, 422.

On boundaries:    Booker v. Hart, 77 Texas, 146; Randall v. Gill, 77 Texas, 351; Jones v. Andrews, 72 Texas, 5; Brown v. Bedinger, 72 Texas, 247; Scott v. Pettigrew, 72 Texas, 321; Adams v. Crenshaw, 74 Texas, 111; Fagan v. Stoner, 67 Texas, 286; Ayers v. Harris, 64 Texas, 296; Ayers v. Lancaster, 64 Texas, 305.

*Walton, Hill & Walton* and *Cochran & Parker*, for Mrs. Fannie Talbot et al., intervenors.—1. The County Court of San Patricio County, being

a court of general jurisdiction in matters pertaining to the estates of decedents, its proceedings in reference to the estate of Edward Ryan, he being a citizen of that county, can not be questioned in a collateral attack, as is attempted by plaintiffs in error, they being strangers and having no interest in his estate. The burden is upon them to show that no facts existed which could have authorized the court to appoint an administrator. And we submit that the transcript offered in evidence does not affirmatively show that the court had no jurisdiction over the estate; and that the mere fact that there does not appear in the papers and proceedings copied that any debts against the estate were ever presented, is not sufficient, after the lapse of forty years, to discharge the burden resting upon them. We further submit, that after the lapse of so great a time as forty years, it appearing that one of the heirs was administrator, and that at the close of the administration a partition was had, in which the other heir participated and received her part of the estate, it must be held that the County Court of San Patricio County had jurisdiction, and that its orders and decrees are conclusive. Martin v. Robinson, 67 Texas, 368; Lynch v. Baxter, 4 Texas, 431; Burdett v. Silsbee, 15 Texas, 604; Giddings v. Steele, 28 Texas, 750; Brockenborough v. Melton, 55 Texas, 493.

2. The question of true location of the north line of the James Smith league was a question of fact, to be decided by the jury, under proper instructions by the court as to the general rules of law applicable to questions of disputed boundary. The controlling question in determining the boundaries of a survey is, Where did the original surveyor actually run the lines on the ground? And if all the lines were not run, where did the surveyor intend the line should be? In submitting these questions, the court gave in charge all the rules applicable, viz., calls for natural objects, such as rivers, creeks, etc., control calls for artificial objects; these in turn control course and distance, and course controls distance. But all these rules are mere guides in determining where the lines were actually run or intended, and are to be disregarded if the jury are satisfied that the true location can be better ascertained by the testimony of living witnesses, who were present when the land was originally located, or from other circumstantial and admissible testimony of the main fact. We believe that the foregoing is a correct statement of the law of disputed boundaries; and the court having submitted the same fully to the jury, and there being abundant evidence to support their finding, we submit that, presenting a question of fact passed upon by the jury, under proper instructions from the court, this proposition can not be sustained.

As to boundaries: Stafford v. King, 30 Texas, 257; Jones v. Andrews, 72 Texas, 5; Adams v. Crenshaw, 74 Texas, 111.

As to effect of maps: Welder v. Carroll, 29 Texas, 317; Boon v. Hunter, 62 Texas, 582.

BROWN, SPECIAL JUDGE.—This is an action of trespass to try title to a tract of land in Williamson County, Texas.

The original plaintiffs in the action, pending the suit, sold out to Amanda Talbott and Adaline Talbott, who became plaintiffs in their stead.

The defendants in the suit were James Frame, S. G. Yakey, John F. Black, D. A. Frame, and Saul & Evans; the three first of whom filed disclaimers, and no further notice will therefore be taken of them.

Fannie Talbott, for herself and for the use of her minor son Thomas Talbott, and Isa Talbott and Joseph W. Talbott, as the heirs of Joseph W. Talbott, deceased, made themselves parties, as intervenors, in lieu of the administrator of the estate of said J. W. Talbott, deceased, who had, pending the administration on said estate, intervened therein.

The said substituted plaintiffs recovered nothing by the suit; but they are not here complaining of the judgment rendered in the cause, and no further notice need be taken of them.

The defendant D. A. Frame appears to be satisfied with the judgment rendered in the case; and as the conclusions we have reached as to a proper disposition of the case will in no way affect him, he will not be further noticed.

This leaves, as the contending parties before this court, the said intervenors and the defendants Saul and Evans. The intervenors, in their pleadings in the court below, alleged, that the land in controversy was located by virtue of land certificate number 1077 for 1014.9 acres, issued to Edward Ryan by the State of Texas, on the 17th day of April, 1852, and that they had title in fee simple to the land; and they plead their title specially as follows, to-wit: (1) A conveyance of the said certificate on the 9th day of February, 1853, to James O'Neal by John Ryan, as administrator of the estate of Edward Ryan, under proper orders of the County Court of San Patricio County. (2) A conveyance of said certificate on February 10, 1853, by James O'Neal to John Killet. (3) A conveyance of said certificate, on April 8, 1853, by John Killet to Rogan & Cowen and Ralph Crane. (4) A conveyance of said certificate, on May 20, 1853, by Rogan & Cowen to Ralph Crane. (5) A conveyance of said certificate, on May 23, 1853, by Ralph Crane to Wm. P. De Normandie. (6) A conveyance of said certificate, on June 7, 1853, by Wm. P. De Normandie to Joseph W. Talbott. And they allege the death of Joseph W. Talbott, and that his estate had been administered, and the administration had been closed, and that they were his sole heirs, and as such were the owners of the land located by virtue of the certificate.

The defendants Saul & Evans plead a general denial and not guilty.

The facts which we find to be established are, that the James Smith league is a headright granted to James Smith in 1832, as a settler in Austin's Little Colony; that the survey was crossed by the line dividing said colony from Robertson's Colony; that the Legislature of the State of

Texas, in 1852, passed an act validating the location, notwithstanding a part of the survey as made lay in one of said colonies and a part in the other; that the northeast corner of said survey is 5058 varas north 10° east from where its east boundary crosses Brushy Creek; and that defendants Saul & Evans own said survey. We further find, that the Edward Ryan certificate number 1077, issued April 17, 1852, is located on the north boundary of the Smith survey; that there is no conflict between said surveys; and that the north string of the fence of Saul & Evans, built on what they assume to be the north boundary of the Smith survey, is 1942 varas north of that boundary, and is upon the Ryan survey.

We further find, that John Ryan and Mathew Ryan, on the 9th day of September, 1848, made a single application to the Probate Court of San Patricio County for letters of administration upon the estate of John Ryan, their father, and upon the estate of Edward Ryan, their brother, representing that both were citizens of San Patricio County, and had been dead some twelve years, and had left real estate in said county. That on the 25th day of September, 1848, said court being in regular session, it made its order appointing John and Mathew Ryan administrators of the estate of John Ryan, deceased, upon their giving bond in the sum of $3000. That on the same day, in a separate order, the said court appointed John Ryan and Mathew Ryan administrators of the estate of Edward Ryan, deceased, upon their giving bond in the sum of $80. That on the same day Patrick O'Daugherty, John Clark, and Patrick McFadden were appointed appraisers of the estate of Edward Ryan by said court, and returned under oath, as the property belonging to the estate, a claim for 1200 acres of land, and a claim for 640 acres of land, valued at $40; and the said John and Mathew Ryan, as administrators of Edward Ryan's estate, declared under oath that the two claims constituted all the effects belonging to the estate, except pay due for military services, the amount of which was not then ascertained. That John Ryan and Mathew Ryan gave bonds, which were approved by the court on the 27th of November, 1848, but the record of the proceeding does not show that the bonds given and approved were bonds as administrators of the estate of Edward Ryan. That between 1848 and 1852, the said Mathew Ryan died.

That on the 29th day of November, 1852, the said court, reciting the fact that a petition had been theretofore filed by John Ryan as adminstrator of the estate of Edward Ryan, setting forth that it was necessary to sell a portion of said estate to pay the expenses of administration and asking for an order to sell, made and entered an order, authorizing and directing said administrator to sell of the property of said estate bounty land certificate number 1077 for 1920 acres of land, issued April 17, 1852. That the said administrator, on the 4th day of January, 1853, in compliance with said order, sold said land certificate, and that James O'Neal became the purchaser thereof at the sale at $8\frac{1}{2}$ cents per acre, and he made

return of said sale to said court; that said sale was approved by the court, and the administrator was ordered to make deed to James O'Neal. That James O'Neal paid to the administrator the purchase money for the certificate, and the administrator made him a deed, conveying to him said certificate, on the 9th day of February, 1853.

We further find, that said certificate was sold and conveyed by James O'Neal to John Killet on the 10th day of February, 1853, and by said Killett to Rogan & Cowen and Ralph Crane on the 8th day of April, 1853, and by said Rogan & Cowen to Ralph Crane on the 20th day of May, 1853, and by Ralph Crane to Wm. P. De Normandie on 23rd May, 1853, and by Wm. P. De Normandie to Joseph W. Talbott on the 7th day of June, 1853.

We further find, that Joseph W. Talbott located the said certificate, and that intervenors acquired all the title that Joseph W. Talbott had to the certificate and to the land located under it.

We further find, that subsequent to the sale of said certificate to James O'Neal by said administrator, the said administrator filed an additional inventory of property belonging to the estate of Edward Ryan, consisting of a land certificate for 640 acres, and a town lot in San Patricio, in San Patricio County. That the heirs of Edward Ryan were the said John Ryan and Mathew Ryan, his brothers, and one Mary Ryan, his sister; and the heirs of the said Mathew Ryan were his brother, the said John Ryan, and said Mary Ryan, his sister. That after said additional inventory was filed, the administrator asked for partition of the estate of Edward Ryan between himself and said Mary Ryan; that in order to make partition, it was found necessary to sell the 640 acres land certificate, which being done under the court's orders, the court then directed partition to be made as prayed, after certain debts were paid, which were as follows, to-wit: County judge's fees, $13.14; county clerk's fees, $16.00½; B. F. Neal's fee for getting certificates, $7; commissioners' fees, $6; publication in Nueces Valley, $8; P. O'Daugherty, $5; and commissions of administrator, $14.40; making a total of $69.59; and that this sum being deducted from the proceeds of the sale of the land certificates, aggregating $278.40, the balance of the money and said town lot were partitioned, share and share alike, between said administrator and said Mary Ryan, and the portions of each were accepted by them, and they were then and have ever since been entirely satisfied therewith.

The result of the trial in the court below was a verdict and judgment in favor of intervenors; and Saul & Evans have brought the case here by writ of error for review, upon errors assigned by them as plaintiffs in error.

The plaintiffs in error complain of the ruling of the court below in allowing certain evidence to go to the jury over their objection, which they claim was prejudicial to their rights, and which they assign as error.

No bill of exception was taken to the action of the court in the matter complained of, so far as the record before us discloses. It appears from the statement of facts, that the testimony when offered was objected to by plaintiffs in error, and was admitted over their objection, and this would suffice to have the question of the admissibility of the testimony passed upon by this court, if the statement of facts had been filed in time; but it further appears, that under an order allowing the same, the statement of facts was not filed until after the adjournment of the term. The law is well settled, that the ruling of the court below on the admission of evidence will not be revised by this court unless it is shown by bill of exceptions or is made to appear in the statement of facts. If it be shown by bill of exception, it must appear that the same was presented to the judge for his allowance during the term, and within ten days after the conclusion of the trial. Rev. Stats., art. 1363; Farrar v. Bates, 55 Texas, 196, 197. If it is made to appear in the statement of facts, then it must be shown that the statement of facts was presented to the judge within ten days after the trial, and was filed during the term of court. Lockett v. Schurenberg, 60 Texas, 611; Willis v. Donac, 61 Texas, 589. The plaintiffs in error having failed to bring before this court in any proper way the rulings of the court below in relation to the admission of testimony, their assignments presenting these rulings as erroneous can not be considered by this court.

There are two questions presented by the record before us, and which are properly raised by plaintiffs in error, the decision of which, in our opinion, disposes of this case.

One is a question of boundary, submitted to the jury under instructions of the court, laying down the rules by which they should be governed in considering the testimony before them. The finding of the jury on the issue, and the said instructions, are both complained of by plaintiffs in error. It was admitted that Saul & Evans owned the James Smith league of land, which is located north and south across Brushy Creek, in Williamson County, and that it is a valid survey, and is an older survey than the Ryan. The east and west boundaries of this survey are each 10,000 varas long, and its north and south boundaries are each 2500 varas in length. The true northeast corner of this survey is the main question to be determined, on which depends the location of its north boundary line. None of the corners of the survey are marked on the ground. Saul & Evans contend, that the northeast corner of the survey would be found by extending the east boundary line north 10° east 7000 varas from where it crosses Brushy Creek. Intervenors claim that the line should not be so far extended; that at the distance of 5058 varas the true northeast corner would be reached. The field notes of the Ryan survey locate it on and north of the north boundary of the James Smith survey.

If Saul & Evans are right in their contention as to the location of the

northeast corner of the Smith survey, then the Ryan conflicts some 800 or 900 acres with the Smith, and Saul & Evans would be entitled to a verdict against intervenors. But if intervenors are right in their claim as to where the true corner is, then there is no conflict, and on the boundary issue intervenors would be entitled to a verdict. On this issue as to boundary, the jury found that the location of the northeast corner of the Smith as claimed by intervenors was correct. We have carefully examined the charge of the court to the jury in reference to this issue, and we find no error therein; and we are of opinion, that the verdict of the jury thereon is supported by a preponderance of the weight of the testimony in the case.

The other question arises under an instruction given by the court to the jury, which is, in substance, that intervenors had shown title to the land located by virtue of the Edward Ryan certificate. This instruction is complained of by plaintiffs in error. It does not appear that they make any question as to the sufficiency of any of the deeds in the chain of title of intervenors, except as to the conveyance to James O'Neal from John Ryan, as administrator of the estate of Edward Ryan. On the trial the entire chain of title of intervenors, as pleaded by them, was put in evidence; and in connection with the deed from said administrator to James O'Neal a transcript of all the proceedings in the estate of Edward Ryan that appeared on the probate record of San Patricio County was read in evidence. Plaintiffs in error contend, that it appears upon the face of said transcript that the administration upon the estate of Edward Ryan was unauthorized and void, because it discloses the fact that Ryan owed no debts, and after twelve years had expired from the date of his death, as was shown by said transcript, no administration could be legally opened thereon; and further, they contend, that if administration upon his estate was proper, that the transcript shows such irregularities as render the proceedings void; and they contend, that the probate proceedings being void, the deed of the administrator to O'Neal is void, and that the instruction given was error.

The position, that there are irregularities apparent on the face of the proceedings, as shown by the transcript, that rendered the administration void, we think untenable. That administration on the estate of John Ryan and on the estate of Edward Ryan was applied for by John and Mathew Ryan in one petition is an irregularity, but not of a character to invalidate the administration, has been decided in this State. Grande v. Herrera, 15 Texas, 538. Plaintiffs in error contend, that the two estates were administered together, by the same orders and judgments, at least as to part of the orders and judgments. We do not so understand the record. The transcript shows, that separate orders were made appointing John and Mathew Ryan administrators of the two estates, and all the proceedings subsequent thereto, in the two estates, are, so far as the

transcript discloses, entirely separate. The failure of the transcript to show bonds executed by John and Mathew Ryan as administrators of the estate of Edward Ryan would not invalidate the sale of the certificate to James O'Neal. That there were such bonds given will be presumed to uphold said sale. Moody v. Butler, 63 Texas, 212. Besides, the recital found in the transcript relating to the approval of their bonds, considered in the connection in which the recital is found, hardly admits of any other explanation than that the bonds referred to were filed by them as administrators of the estate of Edward Ryan.

Again, the record fails to show an application to the court by the administrator to sell the certificate; but there is a recital in the order of the court directing the sale, to the effect that the administrator had presented such a petition. That such an application, however, should appear in the proceedings is not necessary. Alexander v. Maverick, 18 Texas, 196; Robertson v. Johnson, 57 Texas, 64. Plaintiffs in error further insist, that there being two administrators appointed, one could not legally act in making a sale of the property of the estate; but the evidence is, that Mathew Ryan had died before the sale was made; John Ryan being the survivor, his right to act alone is well settled.

Our examination of the irregularities apparent on the face of the probate proceedings, and which are relied on by plaintiffs in error to invalidate the sale of the certificate, satisfies us that they can not have that effect. We believe, that if it were true that John Ryan was not properly appointed administrator of the estate of Edward Ryan, still as he was recognized by the Probate Court of San Patricio County as such administrator, and under its order sold the certificate in question, his authority could not be called in question collaterally for the purpose of invalidating the sale. It has been uniformly held by our Supreme Court, that a purchaser at an administration sale, who has purchased in good faith, and paid the purchase money, will be protected if he shows an order of the court directing the sale, and another confirming the same, or acts of the court amounting to a confirmance of the same. These principles are applicable, however, only in cases where the court has jurisdiction over the estate; where the grounds that confer jurisdiction upon the court to administer the estate actually exist.

This brings us to consider whether or not the proceedings on the estate of Edward Ryan were void for the want of the existence of the necessary facts to confer jurisdiction upon the court to grant the administration. Plaintiffs in error contend that the record of the proceedings put in evidence upon its face shows that the estate owed no debts, and that administration was opened on the estate twelve years after the death of the intestate; and that the nonexistence of debts and the great lapse of time within which no administration was sued out are fatal to the jurisdiction of the court.

Certainly it does not affirmatively appear on the face of the proceedings that the estate owed no debts when the administration was sued out; and there was no proof made outside the record showing that there were no debts then owing by the estate. It does appear upon the face of said proceedings that no debts were paid during the administration except such. as were by it created; but this does not prove that no other debts existed. We have here before us in this case an administration opened by a court of general jurisdiction in probate matters, and no proof of the nonexistence of the facts that would confer jurisdiction upon the court, unless we resort to inference and presumption; but the rule is, that when a court of general jurisdiction assumes to act within the limits of its ordinary powers, all presumptions will be indulged in support of the legality of its action, and not against it. The attack on the proceedings of the County Court of San Patricio County made in this case is a collateral attack; the rule is familiar, that in such cases, the action of the court must be upheld if facts *could exist* that would authorize the action taken. The fact that twelve years elapsed after the death of Edward Ryan before administration was opened upon his estate, affords a strong presumption that the debts of the estate, if any ever existed, had been paid; but it is only a presumption, and the jurisdictional fact of debts by the estate *could exist* in the face of the presumption.

There are a number of cases in our reports where administrations were sued out on the estates of persons who died about the period when Edward Ryan died, and in some instances were sued out after the intestate had been dead for quite a number of years. These cases were carefully reviewed in the well considered case of Martin v. Robinson, 67 Texas, 368, and the judge delivering the opinion, after reviewing them, uses this language: " None of these cases assert the broad proposition, that an administration will be deemed void on the sole ground that over fourteen years elapsed after the death of the intestate before administration was granted." In another part of the same opinion the judge says: " We know of no case in which it has been held under the Act of March 20, 1848, that a grant of administration was void, because made after the lapse of as many years as transpired between the death of James Carter and the grant of administration on his estate." James Carter died in 1853, and administration was opened on his estate in 1867.

In the case of Paul v. Willis, 69 Texas, 264, cited by plaintiffs in error, it appears there were two attempted administrations, one sued out more than ten years after the death of the intestate, and which is presumed to have been closed, and the other sued out seventeen years after intestate's death. The court holds both these attempted administrations to be void. The long time that intervened between the death of the intestate and the commencement of the proceedings is stated as one of the grounds to

render them void; but it is clear from the argument in the opinion, that there were other grounds that had more controlling weight; that there was no necessity for the administration shown; that it was apparent the proceedings were instituted to consume the estate and misapply it under the semblance of legal authority, and by the aid of the Probate Court; and that the proceedings were instituted in a county where no one interested in the estate would be supposed to be looking after it. These considerations are strongly urged in the opinion.

In the case of Stone Land and Cattle Company v. Boon, 73 Texas, 548, also cited by plaintiffs in error, an administration granted fifteen years after the death of Petreswick, upon his estate, was held void. It appears that Petreswick was a member of the Georgia Battalion, and fell at Goliad, and that the petition of the applicant for administration on his estate did not show facts that would entitle petitioner, under the Act of January 14, 1841, to administer on said estate; and on this ground alone the grant of administration on Petreswick's estate was a nullity. This ground was taken by the court in the opinion in the case, but it is further said, that independent of this ground of nullity, the fact that the administration was opened fifteen years after the death of Petreswick, and *no necessity for an administration on the estate was shown*, would of itself render the grant of administration void.

In the view we take of these cases, they do not announce the proposition, that the intervention of any particular period of time between the death of the intestate and the grant of the administration would of itself render the grant void. We think the true doctrine to be deduced from them, and from the case of Martin v. Robinson, supra, is, that in administration proceedings under the Probate Act of 1848, to determine whether or not an administration is void, the courts should look not only to the time that elapsed before it was applied for, but to the entire record of the proceedings, and ascertain therefrom whether or not there was a necessity, or apparent necessity, for the administration; whether or not the application to administer was made in good faith to benefit the estate, by those interested to take care of it, and who were entitled to administer it.

The administration proceedings in the estate of Edward Ryan has peculiar features that appeal strongly to the conscience of a court. It appears that John Ryan and Mathew Ryan, the administrators, were brother of and Mary Ryan sister of Edward Ryan, and the three constituted his sole heirs. Edward Ryan was entitled to two land certificates at the date of his death, which had never been obtained for his estate; he was also entitled to money demands against the government, the amount of which had not been ascertained at the time administration was granted on his estate. Here there is an apparent reason for the administration, and

two out of the three heirs are the applicants for letters; further, the record shows that the proceeds of the estate, after the costs of administration were paid, were divided among those entitled to it as sole heirs of the decedent. The purpose of the administrators in applying for the administration was evidently an honest one, and the proceedings had were satisfactory to those interested in the estate.

In our opinion, the court did not err in giving the charge complained of.

There are other portions of the charge of the court, as well as the refusal of the court to give certain charges asked by plaintiffs in error, which are complained of by them, but we find no error in the action of the court in the matters complained of.

Our conclusion is, that the judgment of the court below is correct and should be affirmed, and it is so ordered.

*Affirmed.*

Delivered June 14, 1893.

Special Court — Judge Collard, and Special Judges L. H. Browne and L. J. Storey, Sr.