CRAWFORD et al. v. GIBSON. (No. 7933.)

(Court of Civil Appeals of Texas. Dallas. April 20, 1918. Rehearing Denied May 18, 1918.)

1. HUSBAND AND WIFE ☞264 — PROPERTY ACQUIRED DURING MARRIAGE — PRESUMPTION.

The presumption that property acquired during marriage is community property may not, as to bona fide purchasers for value without notice, be rebutted by parol evidence.

2. HUSBAND AND WIFE ☞264 — PROPERTY ACQUIRED DURING MARRIAGE — PRESUMPTION.

The presumption that property acquired during marriage is community property may as between the parties, their blood privies, and purchasers without value or with notice, be rebutted by parol evidence.

3. HUSBAND AND WIFE ☞264 — COMMUNITY PROPERTY—SUFFICIENCY OF EVIDENCE.

In suit involving rights of heirs to lot acquired by husband and wife during marriage, and conveyed by wife after death of husband, held undisputed facts in evidence were sufficient to rebut presumption that lot was community property.

4. HUSBAND AND WIFE ☞273(9)—COMMUNITY PROPERTY—SALE BY SURVIVOR.

Whenever right of surviving spouse to sell community property for payment of community debts has been exercised within limitation of law and debts of community paid, it results as a matter of law that property was sold for the purpose of paying community debts.

5. HUSBAND AND WIFE ☞273(9)—COMMUNITY PROPERTY—SALE BY SURVIVOR.

That the motive which induced sale of community lot by surviving spouse was that the surplus above the amount necessary to pay the community debts should be advanced to a child in financial trouble would not invalidate sale.

6. HUSBAND AND WIFE ☞273(9)—COMMUNITY PROPERTY—SALE BY SURVIVOR.

The existence of community debts authorizes the conveyance of community property by the surviving spouse.

7. HUSBAND AND WIFE ☞273(10)—SALE OF COMMUNITY PROPERTY BY SURVIVOR — RIGHTS OF PURCHASER.

The authority of surviving spouse to sell community property for payment of community debts being general, those dealing with survivor are under no duty to see that funds are applied properly.

8. HUSBAND AND WIFE ☞273(9) — SALE OF COMMUNITY PROPERTY BY SURVIVOR—RIGHTS OF PURCHASER.

Presumption of good faith attends sales of community property by survivor for payment of community debts, and the disproportion between the value of the property sold and the debt, in the absence of fraud, is unimportant.

9. PROCESS ☞149—IMPEACHMENT OF RETURN —EVIDENCE.

Evidence must be clear and satisfactory to impeach officer's return.

10. PROCESS ☞149 — IMPEACHMENT OF RETURN—EVIDENCE.

Return cannot be impeached by oath against oath.

11. PROCESS ☞149 — IMPEACHMENT OF RETURN—EVIDENCE.

Failure of officer to identify defendant as party served with citation would not furnish such corroboration of her denial of service as to make it clear, satisfactory, and convincing that she was not served.

Error·from District Court, Dallas County; W. F. Whitehurst, Judge.

Suit by L. H. Crawford and others against W. B. Gibson and others. Judgment for defendant named, and plaintiffs and Mrs. Lucy M. Crawford bring error. Affirmed.

Harmon & Harmon and A. S. Baskett, all of Dallas, for plaintiffs in error. Gano & Gano and Muse & Muse, all of Dallas, for defendant in error.

RASBURY, J. The plaintiffs in error, L. H. Crawford, George W. Crawford, Mrs. Kate Wilkins, Mrs. Francis Ellis, and Miss Lucy Crawford, sued W. B. Gibson, J. K. B. Crawford, and Mrs. Lucy M. Crawford, in statutory trespass to try title for cer-

tain undivided interests in a lot on Crutcher street, in the city of Dallas, and for injunction pendente lite restraining defendant in error, Gibson, and the sheriff of Dallas county from dispossessing plaintiffs in error of said land under authority. of a judgment rendered in the suit of W. B. Gibson v. Mrs. Lucy M. Crawford and J. K. B. Crawford in the district court of Dallas county. Briefly and generally stated, plaintiffs in error alleged that the property of which defendant in error, Gibson, was threatening to dispossess them was community property of Dr. J. W. Crawford, deceased, and his wife, Mrs. Lucy M. Crawford, which the latter, after the death of Dr. J. W. Crawford, undertook to convey to J. K. B. Crawford, in consideration in part of said J. K. B. Crawford's promissory note secured in its payment by the vendor's lien on said land retained in the deed, and which note was, through mesne assignments, acquired by defendant in error, Gibson, who in a suit against Mrs. Lucy M. Crawford and J. K. B. Crawford had foreclosed the lien retained on said land, and was claiming the title and right of possession thereto in virtue of purchase at sheriff's sale under said judgment, but that, due to the fact that plaintiffs in error were children and heirs of Dr. J. W. Crawford, who died intestate, said conveyance to J. K. B. Crawford was ineffectual to pass the interest of plaintiffs in error in said land, etc. Plaintiffs in error also alleged that the sale by Mrs. Lucy M. Crawford to J. K. B. Crawford was simulated, and was but a mortgage in the guise of a deed. Defendant in error, Gibson, among other defenses, pleaded, in substance, first, that the land was the separate property of Mrs. Lucy M. Crawford, and that she, as a consequence, was authorized to convey it; and, second, if community, that fact was immaterial, since the conveyance to J. K. B. Crawford was for the purpose of paying community debts, and as a consequence conveyed the title. Mrs. Lucy M. Crawford, who was made a defendant below, and who is a plaintiff in error here, made common cause with plaintiffs in error, and pleaded in addition that the judgment relied upon by defendant in error, Gibson, was void as against her for the reason that she had never been served with citation therein, and because the conveyance to her son was not a sale, but a mortgage, and, the property being her homestead, was void. J. K. B. Crawford, also made a defendant below, defaulted. There was trial before jury, but upon conclusion of the evidence the trial court peremptorily directed verdict for the defendant in error, which was returned, and followed by similar judgment.

The controlling facts deducible from the record, and upon which the trial judge based his action, are in substance these: Prior to the time Mrs. Lucy M. Crawford and her deceased husband came to Dallas they were living in Corsicana upon property formerly owned by their son J. K. B. Crawford, the deed to which was taken in the name of Mrs. Lucy M. Crawford. While J. K. B. Crawford testified that he "thought" he deeded to both his mother, Mrs. Crawford, testified positively that she remembered seeing the deed, and that it was deeded to her, which was not denied by J. K. B. Crawford. The Corsicana home was destroyed by fire, and the sum of $950 insurance thereon collected. Thereafter J. W. Crawford and his wife, Mrs. Lucy M. Crawford, and their children, removed to Dallas, and the property in controversy was acquired April 23, 1899, from C. E. Bird. The deed was made to Mrs. Lucy M. Crawford, and recited that the consideration was "paid and secured to be paid by Mrs. Lucy M. Crawford." The consideration was $1,650, of which $500 was paid in cash, the balance being evidenced by three notes, one for $150 and two for $500 each. The vendor's lien was retained in the deed to secure payment of the deferred payments evidenced by the notes. L. H. Crawford, who was with his father J. W. Crawford when the purchase from Bird was consummated, testified that when Bird asked his father to whom the land should be conveyed he replied, "You had just as well make it out to Mother; she is liable to live longer than I am." Mrs. Lucy M. Crawford, the wife of Dr. Crawford, the only other witness who testified concerning what was said at that time, testified that when the property in controversy was acquired her husband was in feeble health, and he told her that he had the property conveyed to her because he knew she would outlive him; that he would die in a year or so—so that she would have the property, so that it might be her "own separate estate," and that she so regarded it. The cash payment of $500 and the $150 note were made from the insurance money collected from the policies upon the Corsicana property during the lifetime of Dr. J. W. Crawford. He died August 8, 1901. No administration was had upon his estate, nor was administration necessary. After the death of Dr. Crawford various sums of money were paid on the two unpaid $500 notes, all of it, according to Mrs. Lucy M. Crawford, being advanced by her children in unequal contributions. Of the amount so paid $600 was advanced by L. H. Crawford. From the date of the acquisition of the property to the date of the transaction herein detailed it was occupied and used by Mrs. Crawford as her homestead. On July 1, 1904, Mrs. Lucy M. Crawford, by general warranty deed, conveyed the property to her son, J. K. B. Crawford. The consideration recited in the deed was $1,900 cash, and the note of the vendee for $1,100, payable to the vendor in one year after date, and secured in payment by the vendor's lien retained in the conveyance. The cash consideration recited in the deed was not in fact paid. On the same day the note and the vendor's lien securing its payment of

same was assigned to the Investors' Mortgage Security Company, Limited; also on the same day J. K. B. Crawford, the vendee in the foregoing instruments, by the usual deed of trust, conveyed the land acquired by him to Robert Ralson for the purpose of securing the original indebtedness to his mother so acquired by the Investors' Mortgage Security Company, Limited, which note was by the provisions of the deed of trust extended in time of payment to July 1, 1909, and the lien securing same renewed and likewise extended. The Investors' Mortgage Security Company, Limited, advanced in cash the full amount of the note acquired from Mrs. Lucy M. Crawford, the money being applied as follows: $318 to C. E. Bird in satisfaction of the unpaid purchase price upon the land in dispute; $118.80 for state, county, and city taxes; $12.65 insurance premium; $6 abstract of title; $10.75 attorney's and recording fees; $635 to Mrs. Lucy M. Crawford. The money paid to Mrs. Crawford was by her in turn paid to her son, L. H. Crawford. The money advanced to L. H. Crawford was not in payment of any money he had contributed to his mother, but, so far as disclosed by the record, a contribution. In that connection, as between Mrs. Lucy M. Crawford and her son, J. K. B. Crawford, it was not intended by the conveyance to pass to the latter the title to the property. Their purpose was to secure money for L. H. Crawford, and then reconvey the property to Mrs. Lucy M. Crawford. It was, however, the intention to also pay the debts they did pay in order to secure the money for L. H. Crawford. On August 5, 1904, J. K. B. Crawford, by general warranty deed reciting a consideration of the $3,000 cash which was not paid, conveyed the same property back to his mother, Mrs. Lucy M. Crawford. On April 3, 1907, J. D. Faulkner by assignment acquired from the Investors' Mortgage Security Company, Limited, the $1,100 note of J. K. B. Crawford. On April 9, 1907, Mrs. Lucy M. Crawford, by general warranty deed reciting a cash consideration of $3,000, which was not paid, reconveyed the property to J. K. B. Crawford. On the same day, April 9, 1907, J. K. B. Crawford executed the usual trust deed on said property to W. E. Black, trustee, to secure a note for $1,500, payable to J. D. Faulkner, due one year after date, reciting that said note represented the original $1,100 note given by J. K. B. Crawford to Mrs. Lucy M. Crawford, then due, with accumulated interest, attorney's fees, and advanced insurance premiums. April 2, 1908, W. B. Gibson, defendant in error, for value, acquired the $1,500 note then due from Faulkner. On the same day Gibson extended payment thereof until April 2, 1910. Thereafter, on March 17, 1909, J. K. B. Crawford again conveyed said property to his mother, Mrs. Lucy M. Crawford, reciting a consideration of $3,000 cash, which was not paid. Thereafter, on March 8, 1913, W. B. Gibson, defendant in error, sued upon said note, making J. K. B. Crawford, his wife, Ella Crawford, his mother, Mrs. Lucy M. Crawford, and M. D. Gano, trustee, parties to the suit, and on May 12, 1913, secured judgment by default against J. K. B. Crawford and Ella Crawford for the amount of the note, interest, and attorney's fees, and a judgment against the parties named and Mrs. Lucy M. Crawford and M. D. Gano foreclosing the original vendor's lien, directing the issuance of statutory order of sale, and thereafter execution and writ of possession. Under the terms of the judgment, order of sale was issued, the property advertised by the sheriff and sold to W. B. Gibson, defendant in error, to whom the sheriff executed and delivered the statutory sheriff's deed. Thereafter this suit was brought to establish the interest of the plaintiffs in error in the land, and to enjoin the sheriff and defendant in error from taking possession of the property under the judgment and in virtue of the sale and purchase under said judgment. In connection with the judgment which forms the basis of defendant in error's rights, the return of the officer on the citation issued in that proceeding recites that the same was executed by delivering to each of the defendants in person a true copy of the writ. Mrs. Lucy M. Crawford testified that while she recalled something of the Gibson suit "coming up" it was but little, and that she thinks she never was served with citation; that she was never visited by an officer or served with any papers. Tom Ross, the officer who served the process, testified that he went to a residence on Crutcher street; knocked on the door. An old lady, whom he could not now identify, came to the door, whereupon Ross asked for Mrs. Lucy M. Crawford, whereupon the lady whom he was addressing replied, "That is me." To her he delivered a copy of the citation and departed. On cross-examination, after substantially reaffirming his direct testimony, he testified that he did not know Mrs. Crawford personally, and accepted her word for it that she was whom she claimed to be.

The contention of the plaintiffs in error, aside from an independent issue presented by Mrs. Lucy M. Crawford, subsequently considered, is, in substance, that the property in controversy was the community property of Mrs. Lucy M. Crawford and her deceased husband, and that Mrs. Crawford was without authority, her husband having died intestate, leaving children, to alienate or incumber the interest of the children therein, save to pay community debts, and then only when it was affirmatively shown that community debts existed, that there was a necessity for the sale, and that the sale was made for the express purpose of paying such debts. All such matters, it is further contended, were matters of fact to be submitted to and determined by the jury, and as a consequence the court erred in directing verdict for defendant in error, for the reason that with reference to

such issues the evidence was in conflict. The defendant in error contends (1) that the property was the separate estate of Mrs. Crawford, and as a consequence could be alienated or incumbered at will; and, (2) if community, the sale was in fact made for the purpose of paying community debts.

[1, 2] We will first inquire whether the property, under the facts, was the separate estate of Mrs. Lucy M. Crawford. While it is the long-settled rule, as contended by counsel for plaintiffs in error, that property, however acquired during marriage, whether in the name of the wife or husband, or both, is presumed to be community property, and that such presumption as to bona fide purchasers for value without notice may not be rebutted by parol evidence that it is in fact the separate estate of either spouse (Wallace v. Campbell, 54 Tex. 87), it is as well settled that between the parties, their blood privies and purchasers without value or with notice, such presumption may be rebutted by such evidence. Cooke v. Bremond, 27 Tex. 457, 86 Am. Dec. 626.

[3] We have detailed the facts bearing on the manner and purpose of the parties in acquiring the property in the name of Mrs. Crawford. Succinctly stated, these facts are that the Corsicana home was deeded by J. K. B. Crawford to his mother, Mrs. Lucy M. Crawford. J. K. B. Crawford thought he had deeded to both parents, but it will be observed that he does not deny or take issue with the positive statement of his mother that she saw his deed and that the conveyance was to her, alone. Thus it appears without reasonable controversy that the Corsicana home was the separate property of Mrs. Crawford, being a gift from her son. That place was destroyed by fire, and insurance thereon aggregating $950 was collected, and the family removed to Dallas, and the property in controversy was purchased. Dr. Crawford directed the conveyance of the property to his wife, giving as his reason therefor to his son that his wife would likely outlive him. The reason he gave his wife was that she might have that property as her separate estate. This fact is not a deduction from her testimony, but nearly literally her words. Her statement is of peculiar and controlling force, in view of the relation of the parties. To her her husband would most likely explain his purpose in having the conveyance made to her. Supporting such statement is the fact that the initial cash payment of $500 was from the insurance money collected from the Corsicana place, which was apparently the separate funds of Mrs. Crawford. Subsequent to the execution of the deed all parties seemed to regard the property as that of Mrs. Crawford as evidenced by paying the small $150 note out of the insurance money during the lifetime of her husband, and the other payments by unequal contributions by the children in the nature of gifts to their mother. The facts and circumstances so related are without dispute, and it is not a question of conflict in testimony, but rather whether admitted facts and circumstances are of sufficient probative force as to rebut the presumption arising from the conveyance. We conclude they are. While it is true that in law the presumption in cases like the instant one arises despite the deed, yet it is also true that deeds so taken, as it has been repeatedly held, tend to show that it was the intention to make the property the separate estate of the wife, even though the consideration was paid from the community estate. Emery v. Barfield, 156 S. W. 311, and cases cited. It has also more than once been decided that the presumption that obtains in such cases may be rebutted by the declarations of the husband made at the time. Story v. Marshall, 24 Tex. 306, 76 Am. Dec. 106. No witness, inferentially or otherwise, disputes the facts and circumstances so related. To hold, then, that the property was not the separate property of Mrs. Lucy M. Crawford, would be to discard the undisputed declarations of Dr. Crawford's purpose at the time the conveyance was made, the conveyance itself, as well as the other facts and circumstances tending to corroborate that proof. We therefore conclude that the undisputed facts in evidence were of sufficient force to rebut the presumption arising at law, so that the issue became one of law rather than fact, and that as a consequence the court did not err in directing verdict.

We also conclude, should we be in error concerning the status of the property, that nevertheless the purpose of the sale was to pay community debts, and, being for that purpose, plaintiffs in error cannot complain. The testimony discloses, conceding the property for the time to be community, without dispute the existence and payment of such debts at least to the extent of $318 of unpaid purchase money. But counsel argues that the testimony in like manner discloses that the controlling and ultimate purpose in making the sale was to secure money with which to assist L. H. Crawford out of financial stress. The record without controversy sustains such claim. Does that fact, however, affect the result? We think not. The right of the surviving spouse to sell or mortgage community property, and with the proceeds pay community debts, is a legal right.

[4] Whenever that right has, within the limitations of law, been exercised, and debts of the community actually paid, it results as matter of law that it was sold for that purpose.

[5] The fact that the motive which controlled and induced the sale was that the surplus above the amount necessary to pay the community debts should be advanced to a child in financial trouble cannot operate to render illegal that which was at all times le-

gal. It would be paradoxical and irrational to say that one's present lawful act becomes unlawful because accompanying the lawful purpose is the intention to do something which alone would not have authorized the lawful act. To so hold would create, in cases like the present proceeding, conditions fraught with unjust and inequitable possibilities to those acquiring property from surviving spouses which had been sold to pay community debts, and would have the effect of requiring them not only to ascertain that the property was sold or mortgaged for the purpose of paying community debts, but, after ascertaining that community debts actually had been paid, would require them to ascertain any secret motive with reference to the use of the surplus which may have induced the survivor to exercise the unquestioned legal right.

[6] The existence of community debts authorizes the conveyance of community property. Wenar v. Stenzel, 48 Tex. 488.

[7] The authority to sell is general, and those dealing with the survivor are under no duty to see that the funds are applied properly. Sanger Bros. v. Moody, 60 Tex. 96.

[8] The presumption of good faith attends such sales, and the disproportion between the value of the property sold and the debt, in the absence of fraud, is unimportant. Manchaca v. Field, 62 Tex. 135.

Plaintiff in error Mrs. Lucy M. Crawford, defendant in the court below, but who made common cause with plaintiffs in error, assigns as error in this court the action of the trial court in directing verdict against her. Among other issues raised by her, as we have shown, was the claim that she was not served with citation in the Gibson suit, and that hence the default judgment as to her was void. Mrs. Crawford testified in that respect as did the officer who executed the process. We have stated the facts deducible from the evidence of both. The effect of the officer's statement is that the person served by him at Mrs. Crawford's residence represented herself to be Mrs. Crawford. The statement of Mrs. Crawford, in effect, is that while she remembers when the case was about to be called that she was never served with citation by an officer.

[9] The rule with reference to the sufficiency of evidence to contradict an officer's return is that the evidence must be clear and satisfactory, and not, like the ordinary issue of fact, determined by a mere preponderance of the testimony, but by convincing proof.

[10] The return may not be impeached by oath against oath. Randall v. Collins, 58 Tex. 231.

[11] It is obvious, we think, that the evidence in the present case falls short of being clear, satisfactory, and convincing. At most it is oath against oath. We are unable to agree that the failure of the officer to identify Mrs. Crawford furnishes such corroboration of Mrs. Crawford as to make it clear, satisfactory, and convincing that she was not served. It does not so appear even from her own testimony, because she admits knowing about the suit, and first declares she does not believe she was served, and later says an officer neither visited nor served papers upon her, and we cannot see how the failure of the officer to identify her furnishes such corroboration for her statements as to bring the proof within the rule. The reasons why such evidence is insufficient are stated at length in the case cited, which is our ruling case, and for that reason we omit any discussion of the fundamentals of the rule.

Finding no reversible error in the record, the judgment is affirmed.