Dallas TURNER et al., Appellants,

v.

A. R. SAWYER et al., Appellees.

No. 3093.

Court of Civil Appeals of Texas.

Eastland.

June 4, 1954.

Rehearing Denied Sept. 10, 1954.

Calloway Huffaker and Harold Green, Tahoka, for appellants.

Tom Davis, Haskell, Wagstaff, Harwell, Alvis & Pope, Abilene, Shank, Dedman & Payne, Dallas, Phil W. Davis, Jr., Aspermont, Walton S. Morrison, Thomas, Thomas & Jones, Big Spring, for appellees.

GRISSOM, Chief Justice.

On January 1, 1929, Hill Sawyer and wife executed a warranty deed conveying to J. C. Turner a tract of land described as follows:

"* * * in Stonewall County, Texas, being eighty acres of land out of the North part of the W. A. Chambers Survey, Patent No. 361, Vol. 25 said patent dated April 26th 1893, recorded in Book 1 page No. 59 Patent Records of Stonewall County, Texas, to which Patent reference is hereby made for all purposes. Said eighty acres of land is described by metes and bounds as follows:

"Beginning at the South East corner of the Martindale Survey No. Four;

"Thence West 309.5 and 211 vrs North to an iron pin for beginning Corner;

"Thence North 519 varas to corner on north line of said Chambers Survey;

"Thence West 205.5 varas to a stake for corner;

"Thence South 119 varas to a stake for corner;

"Thence West 863 varas to the North west corner of said Chambers Survey;

"Thence South 400 varas to a stake for corner;

"Thence East 1068 varas to the place of beginning containing 80 acres of land out of said W. A. Chambers, Preemption Survey.

It being understood between the parties hereto that there is reserved unto J. D. Hazelwood, his heirs and assigns by a prior deed, the oils, gas and minerals in and under 50 acres out of the N.W. Corner of the 160 acres of the W. A. Chambers survey, said 50 acres to be in form of a square out of the said N W Corner of said survey."

The consideration recited included five vendor's lien notes for $200 each, due on or before the first day of January of each year thereafter to and including 1934. Turner died January 15, 1929. At the time of the purchase and at his death he was married to Dollie Turner and said land was community property. On September 18, 1933, "Mrs. Dollie Turner" filed in the County Court of Stonewall County a petition for appointment as administratrix of the community estate belonging to her and J. C. Turner, deceased. Said petition recited that her husband died on January 15, 1929, which was more than four years before the filing thereof. She alleged Turner left surviving him, besides said petitioner, several children, including two minors, "who reside with the petitioner temporarily in Stonewall County, Texas * * *;" that there was a community estate between J. C. Turner, deceased, and petitioner; that, at his death, Turner had no fixed place of residence but the "bulk of his property was, and is, situated in Stonewall County, Texas." She was appointed and executed a bond, which was approved. She and the appraisers filed an inventory which showed that the only property of said community estate was 80 acres out of the W. A. Chambers Survey in Stonewall County; that it was valued at $550; that there were outstanding vendor's lien notes against the 80 acres amounting to approximately $500 and that it was the same land as that described in a deed from Hill Sawyer and wife to J. C. Turner, recorded in Volume 59, at pages 39 and 40, of the Deed Records of Stonewall County. (Said deed from Hill Sawyer and wife to Turner was there recorded.)

On April 16, 1945, "Mrs. Dollie Turner, Individually and as Community Administratrix of the Estate of Joe C. Turner, deceased," executed a warranty deed to A. R. Sawyer in which the land therein conveyed was described in the same manner as in the deed from Hill Sawyer and wife to J. C. Turner, except it did not include a reference to the 50 acres of minerals reserved by J. D. Hazelwood in the form of a square out of the northwest corner of the 160 acre W. A. Chambers Survey. As a part of the consideration recited, Sawyer assumed a debt to the Federal Land Bank Commissioner then amounting to $153, which was the unpaid balance of the community debt still owing on the purchase price of the land Turner bought from Hill Sawyer and wife, said debt and lien having been extended by Mrs. Turner by instruments executed by her individually and as community administratrix.

Sawyer and J. D. Hazelwood executed an oil and gas lease on the 80 acres describing the land as it was described in the deed to Sawyer, except that the first call for locating its beginning corner was for the northeast, instead of the southeast, corner of Martindale No. 4. Mrs. Turner, joined by her present husband, Clayton Hatch, and the children of J. C. and Dollie Turner, filed suit in trespass to try title

against Sawyer and others, claiming under Sawyer. At the close of the evidence, both plaintiffs and defendants presented motions for an instructed verdict. Defendants' motion was sustained, a verdict was so instructed, judgment was rendered that plaintiffs take nothing and they have appealed.

In defendants' motion for peremptory instruction they contended, among other things, that (1) plaintiffs' attack on the order of the probate court appointing Mrs. Turner administratrix was a collateral attack; (2) that the evidence showed that the interest of all plaintiffs in the 80 acres vested in A. R. Sawyer through Mrs. Turner's warranty deed to him; (3) that, regardless of the validity of Mrs. Turner's appointment, as the surviving wife of J. C. Turner, she had the power to sell and convey community property for the purpose of paying community debts; (4) that it was conclusively shown that the sale was made to pay community debts and all plaintiffs were bound by said deed; (5) that Mrs. Turner's purported marriage to Mansford was void and when she executed the deed to Sawyer she was not under disability of coverture and when Mrs. Turner executed said deed she recited therein that she was a widow and therefore she was estopped to deny that she was then a widow, or that said deed conveyed her interest.

It is admitted by all that J. D. Hazelwood owns the minerals in 50 acres in the form of a square out of the northwest corner of the 80 acres in controversy and his title need not hereafter be referred to.

Plaintiffs, by motion for peremptory instruction, contended, among other things, that the deed from Mrs. Turner to A. R. Sawyer was not sufficient as a deed of conveyance because of the call for the southeast, instead of the northeast, corner of the Martindale Survey, in locating the beginning, or southeast, corner of the 80 acres in controversy, and that said deed did not convey any right, title or interest in said land; that the uncontradicted testimony of A. R. Sawyer, under whom the other defendants claim, showed that the beginning

point of the land in controversy as it was described in Mrs. Turner's deed was 309.5 varas west and 211 varas north of the southeast corner of the Martindale No. 4 and that such a beginning point would place the 80 acres in the Martindale, not the Chambers, Survey; that any title of defendants must come from plaintiffs through Mrs. Turner's deed, which was void for the following reasons: (a) It did not convey Mrs. Turner's interest because she was not joined by her husband; that she married Mansford in good faith and resided with him in California; that, in the alternative, she was a putative wife and entitled to the protection afforded a married woman; (b) that while she was married to Mansford her powers as administratrix were suspended; (c) that when she executed the deed to Sawyer she had been for more than a year a resident of California and that, therefore, her powers as community administratrix had ceased.

In paragraph 4 of plaintiffs' said motion it was contended that Mrs. Turner's deed to Sawyer showed she was attempting to convey only as community administratrix; that said administration was void because said court had no jurisdiction thereof for the following reasons: (1) her application for appointment showed it was filed more than four years after Turner's death; (2) that there was no community estate because more than four years had elapsed and' title to a one-half interest had vested in the heirs and the land was then held by Mrs. Turner and the children as tenants in common and there was no estate over which said court could acquire jurisdiction and (3) that at the commencement of said administration, she had been a resident of New Mexico for more than four years, and, therefore, said court had no jurisdiction.

Plaintiffs' points 13 through 25 are based on the contention that Mrs. Turner's appointment and her deed to Sawyer were void because her petition for appointment as administratrix was filed more than four years after the death of J. D. Turner. In support thereof, they cite the authorities immediately hereinafter mentioned.

Article 3664, Vernon's Ann.Civ.St., provides the husband shall, within four years after the death of the wife, when there is a child, file a written application in the county court of the proper county stating (1) the death of his wife and the time and place thereof; (2) that she left a child; (3) that there is a community estate between deceased and himself; (4) such facts as show jurisdiction of the court over the estate and (5) ask for appointment of appraisers.

In Williams v. Steele, 101 Tex. 382, 108 S.W. 155, the surviving husband applied for a community administration nearly eleven years after his wife's death and, after being appointed, sold the community real estate. Suit was brought by the wife's heirs to recover the land from his vendee. The heirs contended the sale was void because the surviving husband's application for appointment showed it was filed more than four years after the wife's death. The court said that the ordinary course for the husband to pursue would be to qualify as a regular administrator of the estate but the Legislature had provided a special proceeding whereby, within four years after the death of his wife, he might take administration of the estate out of the court and exercise absolute control over it by being appointed community administrator; that the limitation of four years was a condition precedent to his right to be clothed with such unusual power and, his application showing he failed to file his application within four years, the appointment was void. Plaintiffs point out that the Supreme Court had the same membership when Nelson v. Bridge, 98 Tex. 523, 86 S.W. 7, was decided. It was there held that an ancillary administration with the will annexed commenced in Texas more than four years after the death of the testator was not void. Plaintiffs call attention to the fact that the original administration upon said estate in Louisiana was commenced within four years and contend the court must have intended to differentiate between original and ancillary administrations.

Plaintiffs say that since Mrs. Turner's application shows it was filed more than four years after the death of her husband that the judgment appointing her and her acts thereunder are void, and may be attacked in a collateral proceeding. They also cite Withers v. Patterson, 27 Tex. 491 and Templeton v. Falls Land & Cattle Co., 77 Tex. 55, 13 S.W. 964; Buss v. Smith, Tex.Civ.App., 125 S.W.2d 712, affirmed 135 Tex. 566, 144 S.W.2d 529; Alexander v. Barton, Tex.Civ.App., 71 S.W. 71 (no writ history); Beall v. McDonald, Tex.Civ.App., 181 S.W.2d 718 (RWM); In re Campbell's Estate, Tex.Civ.App., 181 S.W.2d 712.

Although Judge Brown, in Williams v. Steele, supra, said the appointment of a community administrator more than four years after the death of his wife was "void," the certified question he was answering was whether, under the circumstances shown, the district court had jurisdiction to grant a writ of certiorari. Certiorari is a direct attack on a judgment. McDonald v. Edwards, 137 Tex. 423, 153 S.W.2d 567, 570.

■ "Ordinarily a decision on the question in a case, not necessarily presented, will not be treated as binding authority, but merely as persuasive." Wiener v. Zwieb, 105 Tex. 262, 141 S.W. 771, 774.

In Henry v. Roe, 83 Tex. 446, 18 S.W. 806, 808, the court said:

"It is also contended by appellees that the grant of letters of administration to plaintiff in Tarrant county was contrary to law and void. In support of this proposition we are cited to article 1827, * * * which provides that all applications for letters testamentary and of administration must be filed within four years after the death of the testator or the intestate. It is provided in article 1828 that no will shall be admitted to probate after four years from the death of the testator unless it be shown by proof that the applicant was not in default. Both of

these statutes relate to original action in granting letters in this state. We are not prepared to say that, where administration is granted, or a will is probated, in this state after four years from the death of the testator or intestate, the action of the court would be absolutely void."

In Roberts v. Roberts, Tex.Civ.App., 165 S.W.2d 122, 124 (RWM), the application for administration, filed on June 29, 1936, contained an allegation that Callie Roberts died February 21, 1931. However, in the order appointing the administrator, the court found that four years had not elapsed since her death. The court held that, notwithstanding the application showed she died more than four years before it was filed, the contrary finding was conclusive when the validity of the administration was collaterally attacked. The court said: "Moreover, the granting of an administration more than four years after the death of a person, though irregular, is not wholly beyond the jurisdiction of the court so as to render the administration proceedings subject to a collateral attack." In Martin v. Robinson, 67 Tex. 368, 3 S.W. 550, it was held that an administration was not void solely because more than fourteen years had elapsed after the death of the intestate before an administration was granted. See also Hodge v. Taylor, Tex.Civ.App., 87 S.W.2d 533, 535 (Writ Dis.); Tholl v. Speer, Tex.Civ.App., 230 S.W. 453; Nelson v. Bridge, 39 Tex.Civ.App. 283, 87 S.W. 885.

■■ It should be noticed that in Williams v. Steele, supra, there were no community debts. Certainly, if the appointment of the administrator was void, there was no support for the "unqualified" community survivor's deed because there was no community debt. But, without deciding whether the appointment of Mrs. Turner was void, as plaintiffs contend, we shall assume it was void. Nevertheless, we must hold that her deed to A. R. Sawyer was a valid conveyance of the 80 acres in question, binding on Mrs. Dollie Turner and the heirs of J. C. Turner, unless the conveyance is defeated by matters hereafter discussed. The probate proceedings and the record show that the 80 acres was the only community property of the Turners and that at the time of said sale there still existed a community debt secured by a lien thereon. That there still existed a community debt secured by a lien on the land in controversy at the time of the execution of the deed to A. R. Sawyer was admitted by Mrs. Turner and conclusively established. The recitals in said deed and all the evidence conclusively show that the community debt secured by a lien on the land in controversy had been extended by Mrs. Turner. Such debt was still in existence and secured by a lien on the land when she executed the deed to Sawyer. It has long been the established law in Texas that an "unqualified" community survivor may sell community property for the payment of community debts and convey the interest of the children. It was so held in Ladd v. Farrar, Tex.Sup., 17 S.W. 55. In Walker v. Abercrombie, 61 Tex. 69, 74, Judge Stayton, speaking of the power of the surviving wife, said:

"Without administration she may in good faith sell the property of the estate for payment of debts, and thus destroy the title of heirs * * *."

In Davis v. Magnolia Petroleum Co., 134 Tex. 201, 134 S.W.2d 1042, our Supreme Court held that a surviving wife, without qualifying under the statute, had the power to sell the community homestead to pay ordinary community debts. It held that the power of the "unqualified" surviving wife to convey the homestead to pay community debts was not affected by the fact that the deed was executed more than four years after the death of her husband; that whether such community debts were secured or unsecured had no bearing on her power to convey; that the children could not prevent her from selling the homestead to pay community debts and that, under such circumstances, her power to convey as community survivor passed title commensurate with that power, notwithstanding the deed did not show that she was acting as community survivor, and, further, that it was immaterial whether the wife executed the deed

in her name alone or as survivor of the community.

In English v. Paschall, Tex.Civ.App., 229 S.W.2d 645 (Writ Ref.), it was held that the "unqualified" surviving wife had the power to convey a community homestead to pay community debts; that it was immaterial that some of the debts did not constitute legal charges against the homestead or that the consideration received was not applied to the payment of community debts and, further, that the purchaser from the surviving wife had no duty to see that the purchase money was applied to payment of community debts.

In Crawford v. Gibson, Tex.Civ.App., 203 S.W. 375, 378 (Writ Ref.), it was held that when the "unqualified" surviving wife executed a deed and paid a community debt it followed, as a matter of law, that the property was sold for the purpose of paying community debts, notwithstanding the fact that payment of community debts was not the real reason for making the sale.

In Stone v. Jackson, 109 Tex. 385, 210 S.W. 953, the Supreme Court held that the same power to sell community property to pay community debts which was possessed by a survivor who was appointed community administrator by the probate court and qualified under the statute was vested in the community survivor who failed to so qualify. It held that the heirs were entitled, not to one-half of the community property as it existed at the death of the intestate, but, to one-half of what remained after the discharge of debts for which the property was liable. It further held that the power of the "unqualified" community survivor to convey her title and that of the heirs was not affected by the fact that the debt was barred by limitation.

In Griffin v. Stanolind Oil & Gas Co., 133 Tex. 45, 125 S.W.2d 545, our Supreme Court held that the surviving husband was authorized, as against the claims of the wife's heirs, to convey the community estate when there was a community debt; that the amount of the debt was immaterial except as it might bear on the question of fraud,

and, further, that it was immaterial whether the surviving husband signed the deed as community survivor or by his name alone.

In Clemmons v. McDowell, Tex.Com. App., 12 S.W.2d 955, it was held that the surviving husband's sale of community property, there being a community debt, vested the title of the heirs in the purchaser and, as a matter of law, the sale was made for the purpose of paying community debts, if it did so, regardless of the survivor's real purpose in executing the deed.

The following decisions are to the same effect: Fidelity Union Ins. Co. v. Hutchins, 134 Tex. 268, 133 S.W.2d 105, 109; Shannon v. Gray, 59 Tex. 251; Ashe v. Yungst, 65 Tex. 631, 636; Walston v. Gibson, Tex. Civ.App., 141 S.W.2d 997 (Writ Ref.); Fagan v. McWhirter, 71 Tex. 567, 9 S.W. 677; Buckner Orphans Home v. Maben, Tex.Civ.App., 252 S.W.2d 726, 729.

Assuming, as plaintiffs contend, that the order appointing Mrs. Turner administratrix was void because the application showed the order was not applied for within four years after the death of her husband, nevertheless, there being a community debt, we hold that her deed conveyed the title of Mrs. Turner and the heirs of J. C. Turner to A. R. Sawyer, provided, (1) the description in the deed was sufficient to constitute a valid conveyance of the 80 acres in controversy and (2) her authority to convey was not affected by the bigamous marriage of Mansford.

Plaintiffs contend the description in Mrs. Turner's deed to Sawyer was so defective that it was insufficient to convey the land and insufficient as a basis for defendants' claim of a limitation title. Reverting to the description quoted in the beginning of this opinion, leading to the beginning, or southeast corner, of the 80 acres was "beginning at the *South*east corner of the Martindale Survey No. 4." It is true, as plaintiffs contend and as Sawyer testified, that if you begin at the *south*east corner of said Martindale Survey that the metes and bounds description that follow would show said land to be in the Martindale Survey. How-

ever, said deed contained the recital in the first part of the description that the land intended to be conveyed was in Stonewall County and was 80 acres out of the north part of the W. A. Chambers Survey. At the conclusion of the metes and bounds description it is again stated that the land conveyed is out of the W. A. Chambers Survey. Said deed refers "for all purposes" to the patent of the Chambers Survey and tells where it is recorded. The patent shows that the call to begin at the *south*east corner of the Martindale is erroneous and that the *north*east corner was intended. When you substitute north for south at said point, you have a proper description of an 80-acre tract out of the north part of the W. A. Chambers Survey, where said deed said the land intended to be conveyed was located.

The deed from Hill Sawyer and wife to J. C. Turner contained the same mistake. The record conclusively shows that the land plaintiffs claim is the same land intended to be conveyed to J. C. Turner by Hill Sawyer and wife and by Mrs. Turner to A. R. Sawyer. The land sued for in plaintiffs' petition is described therein exactly as in said deeds, with the single exception that plaintiffs' petition locates the southeast, or beginning, corner of the 80 acres by beginning at the *north*east corner of the Martindale No. 4, instead of its *south*east corner. It was the only land owned by said community estate. The description in Mrs. Turner's deed to Sawyer was the same as in the deed from Hill Sawyer and wife to J. C. Turner, except that Mrs. Turner's deed to Sawyer did not include the concluding paragraph of the Hill Sawyer deed, which recites that there was reserved to J. D. Hazelwood the minerals in 50 acres in the form of a square out of the northwest corner of the 160 acre W. A. Chambers Survey.

In the chain of title to the 80 acres in controversy there is a warranty deed, dated April 2, 1920, to the entire W. A. Chambers 160-acre Survey, which describes the tract conveyed by McCarty to J. D. Hazelwood as follows:

"Beginning at the N E Corner of Survey No. 4 in the Name of D. Martindale, a pile of stone; Thence West with North Boundary lines of said Martindale survey 1344 vrs. to its N. W. Corner and the N.E Corner of a 320 acre survey made in the name of the Heirs of W. F. Maury, at 1378 vrs a stake and pile of stone in the North Boundary line of said Maury survey a high point; Thence North cross deep canyon at 611 vrs. a stake in the S E corner of said J. V. Jones survey and Cor of this survey. (It is obvious that there is an omitted call here which should read: 'Thence East 863 varas along the South boundary line of said Jones Survey' and that the second call thereafter for '513 varas' should be preceded by the word 'East.') Thence North with East Boundary Line of said Jones Survey 119 vrs. stake in Post Oak Shinnery from which Kiaw a Peak brs N 2 K. 2 E a Mesq. brs N 9½ E 27½ vrs. Thence E 513 vrs a stake in Shinnery. Thence S 730 vrs. to the place of beginning. Bearing Mkd X containing 160 acres of land."

There is of record a warranty deed, dated July 11, 1925, from J. D. Hazelwood to Hill and E. W. Sawyer conveying the 160-acre Chambers Survey and a deed dated February, 1926, from E. W. Sawyer and wife to Hill Sawyer, the grantor of J. C. Turner, in which the land conveyed is described by reference to the record of the patent of the 160-acre W. A. Chambers Survey. Said patent shows the first call to locate the beginning point, that is, the southeast corner of the 80 acres intended to be conveyed in Hill Sawyer's deed to J. C. Turner and in Mrs. Turner's deed to A. R. Sawyer, should be for the northeast, not the southeast, corner of Martindale No. 4.

It was agreed that M. O. McCarty is the common source of title and that "the deed from M. O. McCarty to J. D. Hazelwood as the same appears of record in Volume 45, page 41, Deed Records of Stonewall County, Texas, properly describes the tract of land involved herein * * *" and that all parties claim through said common source. The description of the land conveyed to Hazelwood is quoted above. It shows that

the reference in Mrs. Turner's deed to Sawyer to the *south*east corner of the Martindale No. 4 was a mistake and that *north*east was intended. It also locates the northwest corner of the W. A. Chambers Survey and, together with the other matters referred to, identifies the land in controversy and shows what land Mrs. Turner intended to convey, and did convey, to A. R. Sawyer, and its location.

■ In 14 Tex.Jur. 1006, the applicable rule is stated thus:

"* * * the documents of reference · are examined along with the deed in order to determine the sufficiency of the description, as gathered from all the related documents, to afford means of identification."

In Adams v. Grogan-Cochran Lumber Co., Tex.Civ.App., 181 S.W.2d 582, 585, affirmed McCall v. Grogan-Cochran Lbr. Co., 143 Tex. 490, 186 S.W.2d 677, the court said:

"* * * the reference in the questioned deed is sufficient, when considered with the chain of title, to identify the tract sought to be conveyed. This reference to patents and deeds, which were made a part of the questioned instrument, must be given meaning if it is possible so to do."

■■ By applying the established rule that a description is certain which can be made certain to Mrs. Turner's deed to Sawyer, it is clearly established what land was conveyed to Sawyer. By looking alone to that deed, we find that the land intended to be conveyed is located in Stonewall County, Texas, and is 80 acres out of the north part of the W. A. Chambers Survey, "Patent No. 361, Vol. 25, said patent dated April 26, 1893, recorded in Book 1 page No. 59 Patent Records of Stonewall County, Texas," which patent was expressly referred to "for all purposes," which includes description and identification of the tract conveyed. It is clearly shown that in the deed to Sawyer the call for the southeast corner of the Martindale Survey is a mistake and northeast was intended. The 160-acre W. A. Chambers Survey is described in the patent, expressly referred to "for all purposes," in Mrs. Turner's deed, as follows:

"In Stonewall County on the waters of the salt fork of the Brazos River about 8½ miles N 11 dg. E of the Rayner by virtue of an affidavit made before N. S. Hudspeth a Notary Public of Stonewall County, February 4, 1892, under an act for the Benefit of actual occupants of The Public Lands 'approved May 26, 1873, beginning at the N E Corner of Survey No. 4 in the name of D. Martindale a pile of stone. Thence *West with the W.B. line* of said Martindale survey at 1344 vrs. (Emphasis ours. It is obvious that 'West with the North Boundary Line' was intended.) Pass N W Corner of said survey, and N E Corner of a survey of 320 acres made in name of heirs of W. F. Maury, at 1378 vrs. a stake and pile of stone in N B line of said Maury survey on high point. Thence North cross deep canyon at 611 vrs a stake in the S. B. Line of Survey of 160 acres made for J. B. Jones. Thence East 863 vrs. a stake the S E Corner of said Jones Survey and 1 corner of this survey. Thence North with E. B. line of said Jones Survey 119 vrs. stake in Post Oak Shinnery from which Kiawa Peak brs N 2½ E a Mesqt. brs N 9½ E 27½ vrs. Thence East 515 vrs a stake in shinnery Thence S 730 vrs to the place of beginning."

It is thus made evident that the Chambers Survey is bounded on the south by portions of the north lines of Martindale No. 4 and the W. F. Maury 320-acre Survey and that the west end of the Chambers is bounded on the north by the south line of said J. B. Jones Survey and that the northwest corner of the Chambers Survey is located on the south line of the J. B. Jones 160-acre Survey at a point 34 varas west and 611 varas north of the northwest corner of the Martindale No. 4. The general location of the Chambers Survey in relation to adjoining survey is shown and

the exact location of its northwest Corner is definitely determined. Applying the recognized rule of construction, beginning with the established northwest corner of the Chambers Survey, we have the following metes and bounds description of the 80 acres in controversy: "Thence East 863 varas to a stake in the Southeast corner of the J. B. Jones 160 acre survey and an L corner of the Chambers Survey; Thence North 119 varas along the East line of said J. B. Jones survey to a stake in Post Oak Shinnery from which Kiawa Peak bears N 2½ E a mesquite bears N 9½ E 27½ varas for corner; Thence East 205.5 varas along the North line of the Chambers Survey for corner; Thence South 519 varas for a corner 309.5 varas West and 211 varas North of the Northeast corner of the D. Martindale Survey No. 4; Thence West 1068 varas to the West line of the Chambers Survey; Thence North along the West line of the Chambers Survey 400 varas to the place of beginning."

A very similar situation was involved in William Carlisle & Co. v. King, 103 Tex. 620, 133 S.W. 241, at page 242, wherein the court said:

"The rule of construction of deeds is, 'that where there is an evident mistake in the calls, the court must, if practicable, find out from the deed itself and correct errors so as to give effect to the deed.' Poitevent v. Scarborough [103 Tex. 111], 124 S.W. 87."

The court further said, 133 S.W. at page 243:

"It was the manifest purpose of Chessher to convey to Burns 160 acres out of the southern portion of the original survey granted to him. The deed to Burns gives a description of the patent under which he acquired the land and gives such calls, corners, and distances as indicate clearly to a casual observer that the land sought to be conveyed lies within the limits of the Chessher survey and in the southern portion thereof. This purpose must be observed in the construction of the deed, and it cannot be effectuated in any other manner than by correcting the palpable errors which appear in the calls as expressed in that instrument. We believe that there is no difficulty in reconciling all of these calls, thereby giving a true and correct expression of the intent and purpose of the makers of this instrument. We therefore hold that the deed upon its face is not void, but that it is sufficient in its description to convey the land, as claimed by the defendants in error, and to give notice to subsequent purchasers of the locality thereof."

In Pearson v. Lloyd, Tex.Civ.App., 214 S.W. 759, 761 (Writ Ref.), it was contended that a judgment was void for lack of sufficient description under circumstances not materially different from that involved here. The call was to begin at a certain intersection with Twenty-Third Street and for land out of the Gostick tract. This was evidently a mistake because such beginning call, taken with the other metes and bounds description, did not describe land out of the Gostick tract. The court said:

"It is shown by the record * * *, without dispute, that Twenty-Third street nowhere touched the Gostick land; and it is apparent from the judgment, by reversing the calls for the description, as there contained that the beginning call for Twenty-Third street was a mistake, and that it was clearly intended that Twentieth street was meant for that call; and the intentions of the parties thus being apparent, there was no error on the part of the court overruling appellants' objection on the ground of insufficiency of description, nor was there error in permitting the evidence showing that Twenty-Third street nowhere touched the Gostick land."

In Poitevent v. Scarborough, 103 Tex. 111, 124 S.W. 87, 88, the court said:

"In the motion for a new trial * * * one of the grounds set up was that the petition and judgment did not contain sufficient description by which

the land could be identified; therefore the judgment was void. In determining the validity of the judgment, the same rule of construction is applicable that would apply if it were a deed. Mansel v. Castles, 93 Tex. 414, 55 S.W. 559. The rule for construction of deeds is: That, where there is an evident mistake in the calls, the court must, if practicable, find and correct the error, so as to give effect to the deed. There is a manifest mistake in this call. 'Thence B.49° W.,' which cannot be correct. It must either be, 'Thence N.,' or 'Thence S.' 'B.' does not indicate any course. The land to be surveyed is a part of the Win survey, and no part of that survey could lie north of its northwest line. If the call be considered 'S. 49° W.,' then, to find the third corner, we must reverse the call and run from the beginning corner, following the Thompson line N. 49° W., 616 varas, which would place the corner north of Win's northwest line. A straight line between that point and the second corner would not embrace any of the Win survey. Therefore it is conclusive that the call at the third corner should be 'thence N. 49° W.,' which would place the third corner on the north line of the Thompson survey, 616 varas S. 49° E. from the beginning corner."

In Hutchison v. East Texas Oil Co., Tex. Civ.App., 167 S.W.2d 205, 208 (R.W.M.), it was held that where a call in a deed directed that the margin of the river be followed to the northwest corner of a particular survey but the northeast, not the northwest corner, touched the river, the trial court properly held that the call was an obvious error and that the deed would be treated as if it had called for the northeast corner. See also Miller v. Hodges, Tex.Com.App., 260 S.W. 168, 171; Mansel v. Castles, 93 Tex. 414, 55 S.W. 559; Rhoden v. Bergman, Tex.Civ.App., 75 S.W.2d 993, 996 (Writ Ref.); 14 Tex.Jur. 1003; 16 Am.Jur. 586.

Plaintiffs contend that the deed to Sawyer did not convey Mrs. Turner's interest because she was then married to Mansford and he did not join in the conveyance. This contention is overruled. The record shows conclusively that at the time she executed and acknowledged said deed as a widow, under the name of Mrs. Dollie Turner, she had previously gone through a marriage ceremony with Mansford but that he then had a lawful wife living and that Mrs. Turner thereafter had said marriage annulled and declared void because of that fact. Being void, said purported marriage did not affect her power to convey.

As we understand their contentions, plaintiffs say that Mrs. Turner's deed did not convey the interest of J. C. Turner's heirs because it was necessary for them to join her in the execution of the deed. As the "unqualified" community survivor she had the power to convey not only her interest but that of the heirs for the purpose of paying community debts. We think this situation is not shown to be altered by the passage of time alone. The only evidence relative thereto is that from the death of J. C. Turner until the property was conveyed to Sawyer, Mrs. Turner had charge of the land and collected the rents and paid the taxes. She had previously leased this land. There is no evidence of any action on the part of the heirs to partition the land or terminate her control of the land and right to dispose of it to pay community debts. In this connection see Tholl v. Speer, Tex.Civ.App., 230 S.W. 453, 456 and Drought v. Story, Tex.Civ.App., 143 S.W. 361 (Writ Ref.).

Since we have held there was a valid conveyance of the interest of all the plaintiffs to Sawyer, it is unnecessary to discuss other questions presented, including that of defendants' title by limitation.

All of plaintiffs' points are overruled and the judgment is affirmed.